Donald G. SPENCER, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 90–1360.

United States Court of Veterans Appeals.

Argued Oct. 29, 1992.

Decided March 1, 1993.

284

Michael P. Horan, Washington, DC, for appellant.

Adam K. Llewellyn, with whom James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Angela Foehl, Washington, DC, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and MANKIN and STEINBERG, Associate Judges.

STEINBERG, Associate Judge:

The appellant, veteran Donald G. Spencer, appeals a July 23, 1990, decision of the Board of Veterans' Appeals (BVA or Board) denying service connection for multiple sclerosis (MS). Donald G. Spencer, BVA 90–25138 (July 23, 1990). The appellant asserts that, although he did not submit evidence that was "new and material",

under the precedents of this Court, so as to reopen his previously and finally denied claim, the Board was required to review his claim de novo pursuant to 38 U.S.C.A. § 5110(g) (West 1991) and the Veterans' Judicial Review Act (VJRA), Pub.L. No. 100–687, 102 Stat. 4105 (1988), or, alternatively, that his evidence must be considered new and material because the Board at the time of its prior decisions had been statutorily prohibited from considering similar evidence then submitted. The Court will affirm the Board's decision.

## I. BACKGROUND

The veteran had active service from March 1944 to February 1946. R. at 11. His induction physical was negative for defects. On his separation examination, it was reported that he had had a left-knee operation in 1938 and back strain in 1944. *Ibid.* In December 1946, the veteran filed with a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) a claim for service connection for backache, submitting a private examination report stating that he had some limitation on forward bending and a "crackling sensation on extremes of flexion". *Ibid.* At an April 1947 VA examination, the veteran reported intermittent low back pain since service with some limitation of motion. *Ibid.* The RO denied the claim in June 1947. *Ibid.*

In November 1976, the veteran filed a claim with the VARO for service connection for MS. He submitted a statement from a private physician, Dr. Edward J. Fredericks, who stated that he had treated the veteran since November 1975, and that the veteran had MS. Dr. Fredericks further stated:

> The history suggests the possibility that he had his first attack of multiple sclerosis in the spring of 1945, following a plane crash. He apparently had numbness and weakness of his legs for several weeks at that time, which I suspect was not a direct result of his injury. It is not possible to prove that this was his first episode of [MS], but it is certainly possible.

R. at 1. In a November 9, 1976, decision, the RO denied the claim. R. at 2.

In March 1977, the veteran submitted another letter from Dr. Fredericks, stating: "I have reviewed [the veteran's] neurologic history dating back to the spring of 1945 and have read a letter from one of his companions at that time. The history suggests the probability that he had his first attack of [MS] in the spring of 1945." R. at 7. He subsequently submitted statements, from other private physicians who had treated him for back and leg problems between 1966 and 1977, that the veteran's problems could have been indicative of MS (R. at 28–29, 34), and several lay statements that the veteran had had back problems in service (R. at 8–9, 38–39) and had had trouble walking and problems with his back and legs since service (R. at 25, 34).

On November 7, 1977, the veteran testified under oath at a hearing before the RO that he had been in an airplane crash in service in the spring of 1945 (R. at 45); that he had experienced fatigue and numbness during service prior to the airplane crash (R. at 45); that he had had extreme back pain and trouble ambulating after the crash (R. at 45); that after the crash he had collapsed and been temporarily paralyzed during a basketball game (R. at 46); and that he had had back problems shortly after his discharge from service, when he was attending college (R. at 50). He testified that he had sought and received treatment in the early 1950s for back and leg problems, fatigue, and numbness (R. at 52, 59), that he had been found to have a high level of albumin in his urine during service (R. at 53–54) (which he contends is indicative of MS), and that he had served in the inactive Navy Reserves after his discharge (R. at 64).

In a May 24, 1978, decision, the BVA denied service connection for MS and for a back disability. R. at 83. With regard to the MS claim, the Board stated that Dr. Fredericks' opinion was unsupported by the evidence of record, that his opinion was based primarily on history related by the veteran, that service medical records were negative for complaints of leg numbness or weakness, and that examinations in 1946

and 1947 had revealed no neurological abnormalities. On January 10, 1980, an expanded panel of the Board, in a reconsideration decision, also denied the claims. R. at 93.

In 1983, the veteran submitted additional evidence, including a lay statement from his brother-in-law stating that he had lived with the veteran from 1948 to 1952 and had lived in the same neighborhood until 1959, and that the veteran had then had problems with his legs, back, and eyes requiring him to visit several doctors. R. at 99. He submitted a lay statement from his former college roommate from the fall of 1946, stating that the veteran had then suffered from excessive fatigue and a left-foot dangle. R. at 100. In an October 1983 report of an examination, Dr. Robert L. Chesanow, a private neurologist, stated that he had examined all the medical and lay evidence relating to the veteran's claimed disability, conducted a neurological examination of the veteran, and concluded that the evidence established "that the patient's [MS] began during 1944–45 (age 20), with a high degree of medical probability", and that "[t]he facts can be interpreted in no other way." R. at 101–05. At a November 1983 personal hearing before the RO, the veteran and Dr. Chesanow both testified under oath. R. at 106–18.

In an October 4, 1984, decision, the BVA denied the MS claim, stating that the lay statements and testimony submitted since the prior BVA decision in 1980 were all "essentially similar" to those previously considered. R. at 141. With regard to Dr. Chesanow's statement and testimony, the Board stated that it was "based to a considerable extent upon information supplied to him by the veteran more than 37 years subsequent to service discharge", and concluded that Dr. Chesanow's statement did not present an adequate evidentiary basis reasonably supporting a finding that MS was actually present in service or within the presumption period. R. at 142.

In 1986, the veteran sought to reopen his claim and informed the RO that he had served in the Army Reserves and Massachusetts National Guard from June 14, 1950, to August 25, 1958, and that he had served in the inactive Navy Reserves from 1946 until 1950. R. at 148. In a March 30, 1987, decision, the Board again denied the claim. R. at 154.

In May 1989, the veteran and his wife appeared at a personal hearing before the RO and testified under oath that the veteran had had problems with his back and legs since service, including numbness, tingling, fatigue, and trouble ambulating, and that he had, at times, had to use canes to ambulate. R. at 175–94.

In its July 23, 1990, decision here on appeal, the BVA again denied the claim. The Board noted: "No specific allegations of obvious error have been made with respect to these determinations in the current appeal. The question for consideration is, therefore, whether the additional evidence presented creates a new factual basis warranting allowance of service connection." *Spencer*, BVA 90–25138, at 6. The Board concluded that "the additional evidence consisting of personal hearing testimony does not reasonably establish that the veteran's [MS] is the result of his active service." *Ibid.* The Board went on to state that the earlier medical opinions were based on the history provided by the veteran many years after service, that the history was not confirmed by contemporaneous clinical records, and that the plane crash in service was not mentioned in his service records. *Id.* at 6–7.

At oral argument on the present appeal, the Court requested the parties to submit supplemental memoranda addressing, inter alia, the issue of whether the scope of the VA's authority to reopen a claim in the event of new and material evidence was changed by the VJRA and whether the VA's practice with regard to reopening claims upon new and material evidence had been in conformance with the statutory requirements prior to the VJRA. The parties filed those memoranda on November 12 and 19, 1992.

## II.  ANALYSIS

### A.  Two–Part Test for Reopening Previously and Finally Denied Claims

■ Pursuant to 38 U.S.C.A. § 5108 (West 1991), the Secretary of Veterans Af-

fairs (Secretary) is required to reopen a previously and finally denied claim when "new and material evidence" is presented or secured with respect to that claim. *See also* 38 U.S.C.A. § 7104(b) (West 1991). On claims to reopen previously and finally denied claims, the BVA must conduct a two-step analysis. *See Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is "new and material". If it is, the Board must then review the new evidence "in the context of" the old to determine whether the prior disposition of the claim should be altered. *See Jones (McArthur) v. Derwinski,* 1 Vet.App. 210, 215 (1991).

In this case, which was decided prior to this Court's decision in *Manio, supra,* the Board did not apply the two-step test for adjudicating claims to reopen previously and finally denied claims. Instead, it stated the issue as "whether the additional evidence presented creates a new factual basis warranting allowance of service connection", and concluded that "the additional evidence consisting of personal hearing testimony does not reasonably establish that the veteran's multiple sclerosis is the result of his active service." *Spencer,* BVA 90–25138, at 6. Because the BVA did not apply the two-step *Manio* test, it is not clear from its decision whether the Board concluded that there was new and material evidence to reopen the veteran's claim for service connection of his MS.

The determination as to whether evidence is "new and material" is a conclusion of law which this Court reviews de novo under 38 U.S.C.A. § 7261(a)(1) (West 1991). *See Masors v. Derwinski,* 2 Vet. App. 181, 185 (1992); *Jones,* 1 Vet.App. at 213; *Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991). Evidence is new if it is not "merely cumulative" of evidence already in the record. *Colvin, supra.* Evidence is "material" if it is "relevant [to] and probative of the issue at hand" and there is "a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Colvin, supra.* The only evidence received by VA after the 1987 final BVA decision was the 1990 sworn testimony of the veteran and his wife. That testimony is no more than a reiteration of testimony and lay statements that were before the Board at the time it rendered its prior decisions. R. at 8–9, 25, 34, 38–39, 41–67, 100, 106–18. Therefore, subject to the discussion in part C., below, the 1990 testimony is merely cumulative of evidence previously of record, and it cannot be considered "new and material" so as to justify reopening the veteran's claim. (Indeed, the appellant's counsel so conceded at oral argument.) Subject to the same caveat, the claim should not have been reopened and any error attendant on the Board's failure to apply the proper standards in its adjudication of the claim is harmless. *See* 38 U.S.C.A. § 7261(b) (West 1991); *Kehoskie v. Derwinski,* 2 Vet.App. 31, 34 (1991); *Godwin v. Derwinski,* 1 Vet.App. 419, 425 (1991); *Thompson v. Derwinski,* 1 Vet. App. 251, 254 (1991).

Although the appellant conceded at oral argument that there was no "new and material evidence", as those terms have been construed by this Court in its prior decisions, to reopen his claim, he asserts that the Board was required to review his claim de novo, and presents two arguments in support of that assertion. First, the appellant argues that, pursuant to 38 U.S.C.A. § 5110(g) and 38 C.F.R. § 3.114(a) (1992), VA is required to review previously and finally denied claims de novo when there has been an intervening liberalization of a law affecting entitlement to benefits, and that the VJRA is such a liberalizing law. Therefore, the appellant asserts, the VJRA enactment in 1988 requires VA, upon application from a claimant, to review de novo a previously and finally denied claim. Second, the appellant asserts that prior to the VJRA's enactment the Board was statutorily prohibited from considering as "new and material evidence" anything other than evidence from official service department reports, and that, pursuant to the VJRA provisions amending 38 U.S.C. § 4004(b) (now § 7104) and adding 38 U.S.C. § 3008 (now § 5108), the Board after November 18,

1988, could consider any form of evidence as "new and material evidence". Therefore, he asserts, the Board could not previously have considered, in its adjudications in 1984 and 1987, any of the testimony or lay and medical evidence submitted subsequent to the Board's initial final denial of the claim in 1978. Despite the appellant's concession at oral argument that he had not submitted new and material evidence for purposes of reopening his claim, the gravamen of this argument, asserted at oral argument and in the appellant's November 19, 1992, post-oral-argument memorandum, is that the appellant's 1990 testimony was new and material evidence because it could not be considered cumulative of evidence that the Board had not been permitted by law to consider in its prior decisions, and because it is also relevant and probative and, when viewed in the context of all the evidence, creates a reasonable possibility of changing the outcome.

### B. De Novo Review Under the VJRA as a "Liberalizing" Law

Section 7104(b) of title 38, U.S.Code, provides: "Except as provided in section 5108 of this title, when a claim is disallowed by the Board, the claim may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered." 38 U.S.C.A. § 7104(b) (West 1991). As noted in part II.A., above, section 5108 requires the Secretary to reopen previously and finally disallowed claims when new and material evidence is presented or secured with respect to such claims.

Section 5110(g) of title 38, U.S.Code, pertaining to effective dates of VA benefits awards, provides in part:

> Subject to the provisions of section 5101 of this title, where compensation, dependency and indemnity compensation, or pension is awarded or increased pursuant to any Act or administrative issue, the effective date of such award or increase shall be fixed in accordance with the facts found but shall not be earlier than the effective date of the Act or administrative issue.

38 U.S.C.A. § 5110(g) (West 1991). Similarly, 38 C.F.R. § 3.114(a) (1992), promul-

gated pursuant to section 5110(g), provides in part:

> Where pension, compensation, or dependency and indemnity compensation is awarded or increased pursuant to a liberalizing law, or a liberalizing VA issue approved by the Secretary or by the Secretary's direction, the effective date of such award shall be fixed in accordance with the facts found, but shall not be earlier than the effective date of the act or administrative issue.

The appellant contends that these statutory and regulatory provisions require VA to conduct de novo review of a previously and finally denied claim, regardless of whether new and material evidence has been presented or secured, when there has been an intervening liberalizing law or VA issue which may affect the disposition of the claim. He further contends that the VJRA is such a liberalizing law, thus requiring VA to adjudicate his claim de novo.

Section 5110(g) does not on its face or by clear implication create a requirement that VA adjudicate de novo a previously and finally denied claim when there has been an intervening liberalizing law that may affect the claimant's entitlement to benefits. Rather, that section merely provides the means for determining the effective date of any award of VA benefits made pursuant to a liberalizing law or administrative issue. However, although section 5110(g) does not explicitly create the right to a de novo adjudication, it appears to be contingent upon, and thus to presuppose, the existence of such a right.

The entitlement to de novo review of a previously and finally denied claim based upon an intervening change in law or regulation creating a new entitlement derives from the new law or regulation itself. When a provision of law or regulation creates a new basis of entitlement to benefits, as through liberalization of the requirements for entitlement to a benefit, an applicant's claim of entitlement under such law or regulation is a claim separate and distinct from a claim previously and finally denied prior to the liberalizing law or regulation. The applicant's latter claim, assert-

ing rights which did not exist at the time of the prior claim, is necessarily a different claim. *See, e.g., Sawyer v. Derwinski*, 1 Vet.App. 130, 133 (1991). Section 7104(b) provides that "when a claim is disallowed by the Board, the claim may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered." Where a claim is based upon a substantive right created by a statutory or regulatory provision that did not exist at the time of the prior final denial of the claim, adjudication of the latter claim is not a "reopening" of the first, such as would be prohibited, absent new and material evidence, by section 7104(b). And the fact of the intervening change in law is itself sufficient to change the factual basis such that the latter claim is not "a claim based upon the same factual basis" as the former claim. *Cf. Akins v. Derwinski*, 1 Vet.App. 228, 230 (1991) (holding that a presumption created by statute was itself new and material evidence).

Moreover, there is no indication that Congress or VA has intended to preclude, by operation of the finality provisions of section 7104(b), a claimant's entitlement to benefits under an intervening law providing a new basis for entitlement to benefits. That is particularly so in light of the nature of the VA benefits adjudication process, which operates with "a high degree of informality and solicitude for the claimant" (*Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 311, 105 S.Ct. 3180, 3184, 87 L.Ed.2d 220 (1985)) and VA's policy, stated in its regulations, "to assist a claimant in developing the facts pertinent to the claim and to render a decision which grants every benefit that can be supported in law while protecting the interests of the Government." 38 C.F.R. § 3.103(a) (1992); *see also* 38 C.F.R. § 3.159 (1992).

■ The finality provisions of section 7104(b) are closely analogous to the doctrine of res judicata that generally bars readjudication of claims which have been previously decided. The Supreme Court has stated that it is a "general rule that res judicata is no defense where between the time of the first judgment and the second

there has been an intervening change in the law creating an altered situation." *State Farm Mutual Auto Ins. Co. v. Duel*, 324 U.S. 154, 162, 65 S.Ct. 573, 577, 89 L.Ed. 812 (1945); *see also Texaco, Inc. v. United States*, 579 F.2d 614, 217 Ct.Cl. 416 (1978). Although the prohibition on reopening in section 7104(b), unlike the doctrine of res judicata, is a statutory requirement, essentially the same concerns apply to determine whether the latter claim is the same claim as the former. The Court concludes, therefore, that section 7104(b) does not preclude de novo adjudication of a claim, on essentially the same facts as a previously and finally denied claim, where an intervening change in law or regulation has created a new basis of entitlement to a benefit.

Our conclusion that section 5110(g) presupposes the right to a de novo adjudication but only where an intervening change in law or regulation has created a new basis of entitlement for a particular claimant further derives from the specific language of section 5110(g). That provision establishes a retroactive effective date for an award or increase "where compensation, dependency and indemnity compensation, or pension is awarded or increased *pursuant to* any Act or administrative issue". 38 U.S.C.A. § 5110(g) (West 1991) (emphasis added). The use of the words "pursuant to" clearly indicates that the benefits of this provision adhere only where the "Act or administrative issue" is one which provides a substantive basis for establishing entitlement to benefits.

In the present case, however, the appellant has not pointed to any such change in law or regulation which would require de novo adjudication, absent new and material evidence, of his claim for service connection for MS. Rather, the appellant asserts that the VJRA *generally* is such a liberalizing law because it effected "profound, far reaching, and fundamental changes in the VA's claims adjudication system." Br. at 7. Specifically, he states that the VJRA, inter alia, provided for judicial review of BVA decisions by this Court; required VA to comply with the rulemaking procedures of the Administrative Procedure Act (5

U.S.C. § 553); codified standards pertaining to the burden of proof, the duty to assist, and the benefit of the doubt in VA claims processing and adjudication; required that claimants be given an opportunity to appear at a personal hearing; required the BVA to base its decisions on all the evidence of record and to provide a written statement of its findings and conclusions and the reasons or bases for those findings or conclusions; and liberalized the standards governing the types of evidence that could qualify as new and material evidence to reopen a previously and finally denied claim. The appellant asserts that these changes require VA, upon application, to adjudicate de novo any claim that had been previously and finally denied prior to the VJRA's enactment.

■ Although there is no doubt that the above-described VJRA provisions did fundamentally change the nature of VA claims adjudication proceedings, that fact alone does not provide a basis for de novo readjudication of previously and finally denied claims where neither the facts of the claim nor the provisions of law and regulation governing the claimant's entitlement to benefits have changed since the prior final adjudication. Notwithstanding the VJRA, a claim based upon the same facts and the same claim of legal entitlement cannot be considered a new claim so as to avoid the section 7104(b) statutory prohibitions on reopening previously and finally denied claims and considering claims based upon the same factual basis as were such finally denied claims. Rather, the type of change in law or regulation which will justify a de novo adjudication of a claim after a final decision is a change which provides a new basis for establishing entitlement to the relief sought so as to render the new claim legally and factually distinct from the former claim. *Cf. Sawyer, supra.*

■ In the present case, the appellant's prior claim, which was denied by the BVA in 1978, 1980, 1984, and 1987, was based upon an assertion of service connection for MS, entitlement to which is governed by 38 U.S.C.A. §§ 1110, 1112(a)(4) (West 1991) and 38 C.F.R. §§ 3.303, 3.307, 3.309(a) (1992). Nothing in the VJRA changed the requirements for establishing entitlement to service connection for MS under those provisions. Hence, the Court concludes that the enactment of the VJRA did not provide a new basis for establishing entitlement to benefits which would justify adjudicating de novo, as a new claim, the appellant's claim for service connection of his MS.

### C. Change in the New and Material Evidence Requirements

**i. Summary of the issue:** In his brief and oral argument on the issue discussed in part B., above, regarding de novo adjudication under the VJRA as a "liberalizing" law, and in his post-argument memorandum, the appellant has raised a distinct issue with respect to the VJRA which merits separate consideration of the question whether he had submitted new and material evidence so as to entitle him to reopening of his claim.

Prior to the VJRA's enactment on November 18, 1988, 38 U.S.C. § 4004(b) provided:

> When a claim is disallowed by the Board, it may not thereafter be reopened and allowed, and no claim based upon the same factual basis shall be considered; however, where subsequent to disallowance of a claim new and material evidence *in the form of official reports from the proper service department* is secured, the Board *may* authorize the reopening of the claim and review of the former decision.

38 U.S.C. § 4004(b) (1982) (emphasis added). Section 204 of the VJRA amended this provision to state:

> Except as provided in section 5108 of this title, when a claim is disallowed by the Board, the claim may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered.

38 U.S.C.A. § 7104(b) (West 1991). Section 5108, which was added by VJRA section 103(a)(1), provides: "If new and material evidence is presented or secured with respect to a claim which has been disallowed,

the Secretary shall reopen the claim and review the former disposition of the claim." VJRA Pub.L. No. 100–687, § 103(a)(1), 102 Stat. 4105, 4107 (1988).

The appellant asserts that the pre-VJRA version of section 4004(b) prohibited the BVA from considering anything other than official service department reports as new and material evidence to reopen a claim previously and finally denied by the Board. Therefore, he asserts, when, subsequent to the Board's final denial of his claim in 1978, he submitted additional evidence consisting entirely of other than official service department reports—sworn testimony, lay statements, and medical reports—the Board was prohibited by statute from considering that evidence to determine whether it was new and material. He thus asserts that his 1990 testimony could not be cumulative of that other evidence submitted in 1983 because it could not lawfully have been considered by the Board prior to the VJRA's enactment, and that, therefore, his 1990 testimony must be considered new evidence for purposes of determining whether he submitted new and material evidence sufficient to justify reopening his claim.

At oral argument, the Secretary asserted that, notwithstanding the pre-VJRA provisions of section 4004(b), the VA's practice has always been to accept evidence from any source as new and material evidence, and that the veteran's 1990 testimony was thus cumulative of his prior testimony, which, he asserts, was in fact included in the record before the Board when it rendered its prior decisions (the Board in 1984 made express reference to the 1983 testimony of the veteran and Dr. Chesanow, R. at 139–40). However, the Secretary was unable to cite any statutory or regulatory authority for that asserted VA practice. In his response at oral argument, and in his memorandum filed subsequent to oral argument, the appellant asserted that, even if it was then the VA's practice to consider any evidence, regardless of its source, as new and material (and he did not concede that it was), the VA was without statutory authority to do so, and thus its unauthorized practice could not be upheld as a basis for finding his 1990 testimony to be cumulative of other evidence.

■   The Court notes that, prior and subsequent to the enactment of the VJRA, 38 U.S.C. § 4005(c) (now § 7105) provided (and continues to provide) that a claim that had been finally denied by an unappealed *RO* decision could not thereafter be reopened or allowed "except as may otherwise be provided by regulations not inconsistent with this title". It is thus clear that the Secretary is authorized to establish regulations consistent with title 38 requiring the RO and BVA to reopen, on the basis of other than new and material evidence from service department reports, a claim that had been previously and finally denied by the RO but *not* by the BVA. The appellant has not asserted that section 4004(b) or any other provision of law or regulation ever prohibited such reopening, when authorized by regulation, after final RO denial. Rather, the appellant's argument and this Court's analysis regarding reopening under section 4004(b) on the basis of new and material evidence relate only to those cases where the claim has been denied by a prior final *BVA* decision.

**ii.   VA's pre-VJRA practice:** The Court notes, initially, that there is significant support for the Secretary's assertion that the VA's practice has long been to consider evidence from any source, not just from service department reports, as capable of being new and material. Prior to the November 1988 enactment of the VJRA, VA regulations contained (and still contain) a provision establishing the effective date for claims reopened upon new and material evidence *"[o]ther than service department records* [referred to as "reports" in the statute]" received after final disallowance of the claim. 38 C.F.R. § 3.400(q)(1) (1983) (emphasis in original). Additionally, statements in the legislative histories of bills enacted prior to the VJRA affirm that it was the VA's practice to reopen claims upon receipt of new and material evidence from any source. *See* S.Rep. No. 418, 100th Cong., 2d Sess. 34 (1988) ("Current Board practice is to authorize such reopening when 'new and material evidence' is

received from any source"); EXPLANATORY STATEMENT ON COMPROMISE AGREEMENT ON DIVISION A OF S. 11, 134 Cong.Rec. S16650, 16653 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5782, 5840 (VJRA provision would "make a technical correction in the description of the BVA's authority to re-open a claim by deleting (as inconsistent with present practice) the present requirement that new and material evidence sufficient to reopen a claim be in the form of an official report from the proper service department").

This more flexible practice is not inconsistent with the text of a VA regulation concerning "finality" that then provided:

When a claimant requests that a claim be reopened *after an appellate decision* and submits evidence in support thereof, a determination as to whether such evidence is new and material must be made and, if it is, whether it provides a new factual basis for allowing the claim. An adverse determination as to either question is appealable.

38 C.F.R. § 19.194 (1983) (emphasis added). This regulation gives as its authority "38 U.S.C. 4004(b)", so quite clearly it should not be read as extending beyond its statutory source in permitting reopenings of prior final Board decisions. It is, therefore, difficult to draw much guidance from this language as to whether prior to the VJRA a final Board decision could be reopened by the Board or an RO on other than service-department-report new and material evidence.

It is not clear from the BVA's 1984 and 1987 decisions in this case whether the Board concluded that the evidence then submitted, which included lay and medical evidence, was new and material. However, it is clear that in neither of those decisions did the Board reject the evidence proffered as new and material evidence on the grounds that it could not qualify as new and material evidence because it did not consist of service department reports.

▌ The question, then, is whether the VA's practice of allowing evidence from any source to constitute new and material evidence to reopen a claim previously and finally denied by the BVA was, prior to VJRA enactment, and at the time of the prior BVA decisions in this case, in conflict with the statutory requirements then in 38 U.S.C. § 4004(b). The Supreme Court has described the proper inquiry for determining whether an agency's practice is consistent with a statute that the agency is charged with implementing, as follows:

We first ask "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." (Citations omitted.) "In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." (Citations omitted.) But "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute," (citations omitted) that is, whether the agency's construction is "rational and consistent with the statute," (citations omitted).

*Sullivan v. Everhart,* 494 U.S. 83, 88–89, 110 S.Ct. 960, 964, 108 L.Ed.2d 72 (1990). For the reasons stated below, the Court holds that the law prior to the VJRA was at best ambiguous as to whether section 4004(b) prohibited the RO and BVA from adjudicating a claim that was based on essentially the same factual basis as a claim that had been previously and finally disallowed by the Board, when the new claim was supported by new and material evidence other than service department reports. The Court further holds that the VA's pre-VJRA practice of allowing such claims to be adjudicated when new and material evidence was received from any source was based on a permissible construction of the governing statutory provisions (which, as explained below, have been located in several different statutory sections over the years).

Part of the ambiguity in the pre-VJRA law may derive from the very term "re-

opening". Current section 5108, enacted by the VJRA, requires the Secretary to "reopen" a claim and to "review the former disposition of the claim" when new and material evidence is presented or secured. However, the "reopening" of the claim pursuant to section 5108 is not a reactivation of the previous claim, based upon the original application for benefits. Rather, even upon a reopening, the prior claim is still "final" in a sense. Any award of benefits made upon a claim reopened under section 5108 on other than service department reports will have an effective date no earlier than the date of the filing of the claim to reopen—that is, the date of the *new* application for benefits. *See* 38 U.S.C.A. § 5110(a) (West 1991); 38 C.F.R. § 3.400(q)(1)(ii) (1992). On the other hand, VA regulations have long provided (and still do) that when a claim is reopened on the basis of new and material evidence from service department reports, the effective date of any award shall "agree with evaluation (since it is considered these records were lost or mislaid) or *date of receipt of claim on which prior evaluation was made,* whichever is later, subject to rules on original claims filed within one year of service." 38 C.F.R. § 3.400(q)(2) (1978) (emphasis added).

Furthermore, although section 5108 instructs the Secretary to "review the former disposition of the claim", neither the Secretary nor the Board may *modify or amend* that former disposition except as provided in other statutory and regulatory provisions allowing revision of former decisions on the basis of "clear and unmistakable error" (38 C.F.R. § 3.105(a)) or "obvious error" (38 U.S.C.A. § 7103(c) (West 1991)). Thus, a claim which is "reopened" under section 5108 on the basis of "new and material evidence" from other than service department reports is essentially a new claim, rather than a continuation of the prior claim, and the function of "reopening" under section 5108 is to remove the statutory finality bar of section 7104(b), which, as stated above, operates as a type of res judicata prohibition on readjudication of claims. In contrast, where the claim is reopened on the basis of new and material

evidence from service department reports, the VA has consistently treated it as a true "reopening" of the *original claim* and a review of the *former disposition* in light of the service department reports which were considered to have been lost or mislaid, and the award of benefits is made retroactive to the date of the original claim. *See* 38 C.F.R. § 3.400(q)(2) (1991); VA G.C. Digested Opinion, July 17, 1984 (stating that section 3.400(q)(2) reflects "a longstanding VA policy treating supplemental service department reports correcting prior erroneous reports as providing a basis for an award of benefits *based on the veteran's original claim*" (emphasis added) and citing to opinions of the VA Solicitor from 1935 to 1937).

Although there appears to be scant, if any, discernible support in the *current* statute for VA's different treatment of claims "reopened" on the basis of new and material service-department-report evidence and claims "reopened" on the basis of new and material evidence from other sources, a brief historical overview of the applicable statutory scheme sheds some light upon the disparity.

*iii. Analysis of prior law:* Prior to the 1958 overall codification of title 38 of the U.S.Code, the laws and rules governing veterans benefits were contained in various public laws and in executive orders promulgated by the President pursuant to his authority under Pub.L. No. 73–2 (1933). A "Veterans' Regulation" promulgated by such executive order contained provisions which formed the basis for current section 7104 of title 38, U.S.Code. That regulation provided in part:

II. All questions on claims involving benefits under the laws administered by the [VA] shall be subject to one review on appeal to the Administrator of Veterans' Affairs, decisions in such cases to be made by the [BVA] in accordance with the provisions of paragraph I. When a claim shall be disallowed by the [BVA,] it may not thereafter be reopened and allowed and no claim based upon the same factual basis shall be considered, except that where subsequent to such disallow-

ance new and material evidence *in the form of official reports from the proper Service Department* is secured, the [BVA] may authorize the reopening of the claim and review of the former decision.

Vet.Reg. No. 2(A), Part II, para. II, Ex. Ord. No. 6230 (July 28, 1933) (emphasis added). Another provision in Part I of that same regulation provided:

Where a claim has been finally disallowed, a *subsequent claim* on the same factual basis, if supported by new and material evidence, shall have the attributes of a *new* claim, notwithstanding the provisions of paragraph II, Part II of Veterans' Regulation No. 2–Series.

Vet.Reg. No. 2(A), Part I, para. I(a)(3), Ex. Ord. No. 6230 (July 28, 1933) (emphasis added). The provision in paragraph I(a)(3) of Part I of this regulation clearly provides that, subsequent to final disallowance of a claim, a *new* claim may be filed on essentially the "same factual basis" provided that there is, additionally, new and material evidence. Moreover, the phrase "notwithstanding the provisions of paragraph II of Part II" strongly implies that the "new and material evidence" to support the new claim is not restricted to reports from the service department. Since paragraph II of Part II already provided authority for a "reopening" when there is new and material evidence from service department reports, the "notwithstanding" clause would have no meaning unless paragraph I(a)(3) is read to provide a basis for adjudicating claims based on new and material evidence from *other* sources. In view of the above discussion, it is apparent that the provision allowing the Board to "reopen" on the basis of new and material evidence in the form of service department reports did not thereby *define* the term "new and material evidence" for all purposes to refer to such evidence only.

Furthermore, it is significant that this 1933 regulation did not use the term "reopen" in relation to a claim based on new and material evidence from *other than* service department reports, whereas it did use "reopen" with respect to claims where the new and material evidence was in the form

of service department reports. That distinction can certainly be read as supporting VA's practice of treating claims based on new and material service department reports as "reopened" in that they relate back to the original claim, while treating claims based on new and material evidence from other sources as essentially new claims.

This point is significant. If a "reopening" refers only to revisiting, on the basis of the *original* claim, a claim finally decided by the BVA, and not to claims submitted as "subsequent" or "new" claims on the basis of new and material evidence after final BVA adjudication, then the prohibition in paragraph II of Part II (and subsequently in §§ 4004(b) and 7104(b)) on "reopening" except on the basis of new and material evidence from service department reports would not have precluded the VA from adjudicating, as a new claim, a subsequent claim based on new and material evidence from other than service department reports. The remaining prohibition in paragraph II of Part II (and subsequently in §§ 4004(b) and 7104(b))—that a claim "based upon the same factual basis" may not be considered—would not operate as a bar to the allowance of such *new* claims because the submission of new and material evidence necessarily changes the factual basis.

In 1957, Congress repealed Veterans' Regulation 2(A) and replaced it with provisions of Pub.L. No. 85–56, 71 Stat. 119 (1957). Section 1304 of that law, which was codified at 38 U.S.C. § 3304 (*see* 38 U.S.C., 1952 ed., Supp. V, § 3304), provided in part:

(b) When a claim is disallowed by the Board, it may not thereafter be reopened and allowed, and no claim based upon the same factual basis shall be considered; however, where subsequent to disallowance of a claim, new and material evidence in the form of official reports from the proper service department is secured, the Board may authorize the *reopening* of the claim and review of the former decision.

(Emphasis added.) Section 904 of Public Law 85–86, which was codified at 38 U.S.C. § 2904 (*see* 38 U.S.C., 1952 ed., Supp. V, § 2904), provided in part:

(a) Where a claim has been finally disallowed, a later claim on the same factual basis, if supported by new and material evidence, shall have the attributes of a new claim, except that whenever any disallowed claim is reopened and thereafter allowed on the basis of new and material evidence resulting from the correction of the military records of the proper service department under section 1552 of title 10 of the United States Code, the effective date of commencement of the benefits so awarded shall be the date on which an application was filed for correction of the military record.

In 1958, as part of the overall title 38 codification, 38 U.S.C. §§ 2904 and 3304 were replaced by the virtually identical provisions in 38 U.S.C. §§ 3004 and 4004(b), respectively. Pub.L. No. 85–857, 72 Stat. 1225, 1241, §§ 3004, 4004(b) (1958). The exception in section 3004 was later replaced by section 3010(i) (now § 5110) in 1962. Pub.L. No. 87–825, § 1, 76 Stat. 948 (1962).

As with the predecessor Veterans' Regulations, these provisions speak of "reopening" only when the new and material evidence comes from official service department reports. Moreover, they are again consistent with the VA's interpretation giving retroactive effect to such "reopened" claims based on new and material evidence in service department reports (subject to the limitation that where such new and material evidence arises from *correction* of service department records, retroactivity is limited to the date of application for such correction), while treating claims based on new and material evidence from other sources as essentially new claims.

Section 3004 was repealed by Congress in 1962. Pub.L. No. 87–825, § 5(a), 76 Stat. 950 (1962). Simultaneously, Congress amended 38 U.S.C. § 3010 (now § 5110), concerning "Effective dates of awards", to provide in subsection (a) of that section:

(a) Unless specifically provided otherwise in this chapter, the effective date of an award based on an original claim, *a claim reopened after final adjudication,* or a claim for increase, of compensation, dependency and indemnity compensation, or pension, shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.

Pub.L. No. 87–825, § 1, 76 Stat. 948 (1962) (emphasis added). Pursuant to that same Act, it was "provided otherwise" in 38 U.S.C. § 3010(i) (now § 5110) that where a claim is reopened on the basis of new and material evidence resulting from the *correction* of service department records, the effective date would be the date on which application was filed for such correction of records. Pub.L. No. 87–825, § 1, 76 Stat. 948 (1962) (currently codified at 38 U.S.C.A. § 5110(i) (West 1991)).

Subsequent to the 1962 revisions, section 3010(a) appears to have erased any distinction between finally denied claims "reopened" on the basis of service department reports and claims filed as new claims on the basis of other forms of new and material evidence. Instead, section 3010(a) applied the term "reopened" to any claim based on new and material evidence submitted after a final adjudication. That post–1962 section might also appear to have precluded VA's practice of awarding benefits retroactive to the date of an original claim on the basis of new and material evidence in the form of official service department reports. The legislative history accompanying Public Law 87–825 stated that the purpose of the repeal of section 3004 and the amendment to section 3010(a) was to extend the rule regarding the effective date of awards based on original claims in section 3010(a) to apply also to "reopened claims ... now covered by section[ ] 3004". S.Rep. No. 2042, 87th Cong., 2d Sess. (1962), *reprinted in* 1962 U.S.C.C.A.N. 3260, 3263. Further confusing matters, it was stated that "[g]enerally the changes may be described as liberalizing." *Id.* at 3260.

iv. **Scope of the 1962 amendments:** As noted above, the changes made by Public Law 87–825 are susceptible of the interpre-

tation that they, in effect, removed the VA's authority to adjudicate a previously denied claim when the claimant had submitted new and material evidence other than service department reports. However, that result would be reached only indirectly. By repealing section 3004 and by apparently characterizing all claims based on new and material evidence as "reopened" claims, the 1962 amendments blurred the distinction which was formerly apparent between the provisions of section 4004(b) allowing reopening and review of the former BVA-denied claim only on the basis of new and material evidence in service department reports and the provisions of section 3004 providing that claims based on new and material evidence shall be treated as new claims, without limiting such new and material evidence to service department reports. Consequently, when a claim had been finally disallowed by the Board, any subsequent request for adjudication of that same claim supported by new and material evidence would appear to have been subject to the limitation, in section 4004(b), that a claim may not be "reopened and allowed" except that the Board may reopen on the basis of new and material evidence in service department reports.

However, the Court cannot find any basis for ascribing to the 1962 "liberalizing" legislation any intent to work such a substantial change in the law by limiting the class of competent new and material evidence needed to support a claim after a final disallowance to include only such evidence from service department reports. Although, as noted above, such a result could be said to follow from the 1962 amendments, that result would be reached only indirectly, through the operation of section 4004(b) in view of the repeal of section 3004 and the amendment of section 3010(g), and that result is clearly beyond the intended scope of the 1962 amendments. The express legislative purpose of the 1962 amendments was to provide for uniformity in effective dates of claims; and, as noted, the amendments were characterized generally as "liberalizing" amendments.

Clearly, the foreclosure of a substantial number of claims by prohibiting a reasserted claim subsequent to a final disallowance except upon new and material evidence in service department reports would have been a significant restriction on the rights of VA claimants, and an intent to impose such a restriction should not be ascribed to the 1962 legislation absent explicit support in the language or history of those amendments. The Supreme Court has stated:

As a general rule where the legislation dealing with a particular subject consists of a system of related general provisions indicative of a settled policy, new enactments of a fragmentary nature on that subject are to be taken as intended to fit into the existing system and to be carried into effect conformably to it, excepting as a different purpose is clearly shown.

*United States v. Jefferson Electric Co.,* 291 U.S. 386, 396, 54 S.Ct. 443, 446, 78 L.Ed. 859 (1934); *see also Hynes v. Grimes Packing Co,* 337 U.S. 86, 116, 69 S.Ct. 968, 985, 93 L.Ed. 1231 (1949); *United States v. Arizona,* 295 U.S. 174, 191, 55 S.Ct. 666, 672, 79 L.Ed. 1371 (1935). The system of interrelated statutory provisions governing veterans benefits is a complex one, and an intent to depart from established law or practice will not be generally or lightly inferred when Congress enacts an amendment of limited scope.

The legislative history of Public Law 87–825 is devoid of any congressional intent to limit the circumstances in which claimants may file a new claim, supported by new and material evidence, after final disallowance of that claim. To the contrary, the legislative history expressed only a limited, "liberalizing" purpose. Indeed, one Senator stated during Senate consideration:

No hearings were held on this bill either in the House or in the Senate. It is impossible therefore to determine whether or not it is in the public interest. I think it is poor procedure and that therefore this bill probably needs more thorough scrutiny.

1962 U.S.C.C.A.N. 3269 (statement of Sen. Douglas). This statement suggests that Congress did not intend that Public Law

87–825 operate to limit a VA claimant's right to file a claim based on new and material evidence from any source subsequent to a final disallowance, and did not consider that such might be the incidental result of the legislation. In view of the foregoing, Public Law 87–825 cannot fairly be read as changing the prior law so as to preclude a VA claimant from reasserting a claim, subsequent to a final disallowance, when the claimant presents new and material evidence from sources other than the service department. To the contrary, the provisions of section 3010(a) added by that Act, which establish effective dates for, inter alia, "a claim reopened after final adjudication", clearly were intended to continue the provisions previously in Veterans' Regulation 2(A) and 38 U.S.C. § 3004 allowing a claim subsequent to a final disallowance when new and material evidence is presented from any source. The Court, therefore, concludes that the VA's practice of allowing the reopening of claims in such circumstances was not prohibited by section 4004(b) (now § 7104(b)) or otherwise.

The enactment of the VJRA in 1988 expressly provided that the Secretary was required to adjudicate a claim where, after final denial of that claim, new and material evidence was presented or secured. That requirement, now in section 5108, does not limit new and material evidence to service department reports only. Section 5108, as noted above, requires the Secretary, in such cases, to "reopen the claim and review the former disposition of the claim", although it is made clear elsewhere in the Code (in § 3010(a), now § 5110(a)) that such "reopening" will not have retroactive effect relating back to the original claim but will have the attributes of a *new* claim with regard to effective date. Although, as noted in subpart iii., above, the use of "reopening" in prior statutory provisions may have connoted only adjudication of a finally denied claim on the basis of the original application, with any award being retroactive to the date of that application, the use of that term in § 3010(a) (now § 5110(a)) since 1962 and in § 5108 pursuant to the VJRA makes clear that "reopening" now refers as well to claims based on

new and material evidence from sources other than service department reports; in essence, such claims are treated as new claims.

v. **Conclusion:** Based on the foregoing analysis, the Court holds that the law prior to the VJRA was, at best, ambiguous as to whether the provision in section 4004(b) prohibiting "reopening" by the Board except upon new and material evidence from service department reports was intended to preclude adjudication by an RO or the BVA of a previously and finally denied claim when the only new and material evidence was from other than those reports. In the face of such ambiguity, the Court will defer to the agency's past interpretation allowing adjudication of such claims when new and material evidence is received from any source, because such interpretation is rational and is based on a permissible construction of the governing pre-VJRA provisions of law—specifically Vet.Reg. No. 2(A), Part II, para. II (1933); 38 U.S.C. § 2904 (1957); 38 U.S.C. § 3004 (1958); and 38 U.S.C. § 3010(a) (1962). *See Sullivan v. Everhart*, 494 U.S. at 88–89, 110 S.Ct. at 963–965.

Hence, we reject the appellant's contention that the VA was prohibited, prior to the enactment of the VJRA, from adjudicating a previously and finally denied claim when new and material evidence from sources other than service department reports was presented or secured. In the present case, it does not appear from the record that the RO or BVA ever refused to consider in its prior decisions the veteran's testimony or lay or medical evidence on the ground that such evidence could not qualify as new and material evidence to justify a reopening. *See* R. at 136–42, 155–56. The Court thus confirms the holding in part II.A., above, that the veteran's 1990 testimony was cumulative of evidence previously of record at the time of the prior final BVA decisions and provides no basis upon which the veteran's claim could have been reopened. Accordingly, the Court also rejects the appellant's contention that there was new and material evidence to reopen his claim for service connection for his MS

because the evidence newly submitted could not be cumulative.

### III. CONCLUSION

Based upon the foregoing analysis, the Court holds that there was no new and material evidence presented to or secured by the VA since the BVA's prior final disallowance of the appellant's claim in 1987, that there was no basis for adjudicating his claim de novo under 38 U.S.C. § 5110(g) and 38 C.F.R. § 3.114, and that any error in the Board's analysis in its July 23, 1990, adjudication of the merits of the appellant's claim was, therefore, harmless. *See* 38 U.S.C.A. § 7261(b); *Kehoskie,* 2 Vet.App. at 34; *Godwin,* 1 Vet.App. at 425; *Thompson,* 1 Vet.App. at 254. The July 23, 1990, BVA decision is thus affirmed.

AFFIRMED.