**Damian T. MANIBOG, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 95–26.**

United States Court of Veterans Appeals.

Jan. 4, 1996.

Damian T. Manibog, pro se.

Mary Lou Keener, General Counsel, Ron Garvin, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel and Patricia Trujillo were on the brief, for appellee.

Before NEBEKER, Chief Judge, and FARLEY and IVERS, Judges.

FARLEY, Judge:

This is an appeal from a December 7, 1994, decision of the Board of Veterans' Appeals (BVA or Board), which found that the appellant was not eligible for VA benefits as a former prisoner of war (POW). The BVA also referred to the regional office (RO) a claim for service connection for a wound of the left forearm. Record (R.) at 5. Since there has not yet been a final decision regarding that claim, it is not ripe for our review. *See* 38 U.S.C. §§ 7252(a), 7266(a); *see also Harris v. Derwinski*, 1 Vet.App. 180, 182 (1991). This appeal is timely and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons that follow, the Court will affirm the BVA decision.

## I.

According to an "Affidavit for Philippine Army Personnel," which was signed by the appellant, the appellant was inducted into the U.S. Armed Forces in the Far East (USAFFE) in February 1942, served until April 1942, and served again from January 1946 to February 1946. R. at 23. In September 1975, he filed an application for service connection for tuberculosis. R. at 31–34. In response to a question on the form whether he had ever been a POW, the appellant answered that he had not. R. at 31. He amended his claim in October 1975 to include a claim for service connection for a gunshot wound to the left arm. R. at 36. In an April 1976 response to a request for information by VA, a U.S. Army official indicated that the appellant had no POW status. R. at 44. In May 1976, the RO denied the appellant's claim for service connection for tuberculosis, finding that the service records did not show that he had received treatment for it during

service. R. at 54. In an August 1976 letter, the RO informed the veteran that it was denying his gunshot wound claim because "[a]vailable records do not show that you received treatment for arm injury [in service]." R. at 59.

In June 1978, the RO received a statement in which two of the appellant's fellow servicemembers reported that he had been shot by a Japanese soldier in June 1943. R. at 76. The RO denied both of his claims again in June 1978, noting that June 1943 was "a period of noncasualty status" for the appellant. R. at 79. The appellant filed a Notice of Disagreement (NOD) in October 1978. R. at 83. In April 1979, the BVA denied both of the appellant's claims. R. at 100–02.

In February 1983, the appellant submitted a statement to the RO requesting that it "adjudicate my ... claim in accordance with Public Laws 91–376 & 97–37 of the U[.]S[.] Congress." R. at 104. These two laws concern presumptive service connection for certain conditions for former POWs. Pub.L. No. 91–376, § 3(a), (b), 84 Stat. 787, 788–89 (1970); Former Prisoner of War Benefits Act of 1981, Pub.L. No. 97–37, § 4(a), 95 Stat. 936 (1981); 38 U.S.C. § 1112(b). The appellant submitted another affidavit from two servicemembers, who jointly wrote that they and the appellant were captured by the Japanese and imprisoned from September 1942 until March 1943. R. at 107. The RO sent the appellant a letter stating: "Official Service Department records do not show that you were imprisoned for at least 30 days as a prisoner of war.... In addition ..., you even indicated in your application, VA Form 21–526 dated September 1, 1975[,] that you do not have [POW] experience." R. at 110.

The appellant responded with a letter stating that his application had been completed by his "agent," and that, when he signed the application, he was unaware that his agent had written that he had not been a POW. R. at 112. He also alleged that his "agent" had falsely completed the application regarding two other matters: that the appellant had contracted tuberculosis during service (he alleged in the letter that his chest pain was due to "riflebutts"), and that he had suffered a bullet wound during service (he wrote that

it was a bayonet wound). *Ibid.* The appellant submitted an August 1982 medical certificate which reported that he was examined in Isabela Provincial Hospital for an old scar of the left arm "with slight muscle atrophy due to bayonet wound," "[s]ternal area, lower part depressed allegedly caused by rifle butt," and psychoneurosis "as a result of old experiences suffered during ... World War II." R. at 114. The appellant also submitted a copy of a written oath signed in October 1943 in which he pledged that he would not commit hostile acts against the Japanese Army in the Philippines, a document which he characterized as "[p]roof of POW status." R. at 112, 116–17. In September 1983, the RO declined to reopen the appellant's claim, finding that new and material evidence had not been submitted. R. at 120.

In February 1990, the appellant filed another application for compensation, seeking service connection for beriberi, malnutrition, dizziness, rheumatism, peptic ulcer, malaria, an eye condition, heart disease, "and many others as a result of my POW experience." R. at 133–36. In April 1990, the RO responded that "Official Service Department records do not show that you were imprisoned for at least 30 days as a prisoner of war. Therefore, the provisions of [38 U.S.C. § 1112(b) ] will not apply to you." R. at 140. The appellant submitted two more letters, contending in the first one that he had been a POW from October 1943 until February 1944, and, in the second letter, requesting a POW "protocol examination." R. at 142–43, 147. The RO replied: "In view of the report received from the Department of the Army, [VA] is without legal authority to favorably consider you [sic] claim for [POW] benefits. Your claim, therefore, remains disallowed." R. at 149.

In November 1991, the appellant submitted a statement in which he wrote that he had been a POW from April 1942 until October 1943, and he again requested an examination. R. at 155. He also sent in a 1943 document, which was translated as stating: "This is to certify that Mr. DAMIAN T. MANIBOG has satisfactorily completed a course from the school of the former soldiers of the USAFFE in the province of Isabe-

468

la...." R. at 156–57. The RO responded that the submitted evidence "does not contain any information about your alleged 30–day POW status which may henceforth bring about a recertification of service," and informed him that they could not reopen his claim in the absence of new and material evidence. R. at 159. The appellant submitted an NOD (R. at 161), and the RO issued a Statement of the Case (R. at 164–68). In December 1994, the BVA held that the appellant was not eligible for entitlement to VA benefits under Public Law No. 97–37. R. at 4–9.

## II.

■ Section 1112(b) of title 38, U.S.Code, provides that if a former POW contracts one of fifteen enumerated "diseases" "to a degree of 10 percent or more after active military, naval, or air service[, it] shall be considered to have been incurred in or aggravated by such service, notwithstanding that there is no record of such disease during the period of service." Under 38 U.S.C. § 101(32), a "former prisoner of war" is a person who, during active service,

> was forcibly detained or interned in line of duty—
>
> (A) by an enemy government or its agents, or a hostile force, during a period of war; or
>
> (B) by a foreign government or its agents, or a hostile force, under circumstances which the Secretary finds to have been comparable to the circumstances under which persons have generally been forcibly detained or interned by enemy governments during periods of war.

See also 38 C.F.R. § 3.1(y) (1994). When a service department finds that a person had been a POW, that determination is binding on VA "unless a reasonable basis exists for questioning it." 38 C.F.R. § 3.1(y)(1) (1994); see also Young v. Brown, 4 Vet.App. 106, 108 (1993). However, § 3.1(y)(1) does not require VA to follow a service department's finding that a veteran was not a POW. See VA Gen.Coun.Prec. 14–94 (June 8, 1994), at 1–2. The Board's decision here was reached not by interpreting law but merely by ministerially applying the pertinent law to the

facts found. "There will, of course, be instances where what might be characterized as a legal determination will fall so clearly within the area of the BVA's expertise that deference to that expertise requires that the conclusion be characterized as factual." Bagby v. Derwinski, 1 Vet.App. 225, 227 (1991); see also Lovelace v. Derwinski, 1 Vet.App. 73, 74 (1990); cf. Miller v. Fenton, 474 U.S. 104, 113, 106 S.Ct. 445, 451, 88 L.Ed.2d 405 (1985) (noting that "an issue does not lose its factual character merely because its resolution is dispositive of the ultimate constitutional question [in a case]"); Butts v. Brown, 5 Vet.App. 532, 545 (1993) (en banc) (Steinberg, J., concurring). The Board engaged in a fact-finding process, and then just applied the template created by the statute to those facts. In such a case, the determinative issue is factual in nature, so the appropriate standard of review is whether the Board's findings were "clearly erroneous" under 38 U.S.C. § 7261(a)(4).

■ "[U]nder the 'clearly erroneous' rule this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA, ... we cannot overturn them." Gilbert v. Derwinski, 1 Vet.App. 49, 53 (1990). Here, there is clearly a plausible basis for the Board's decision. First, the service department records do not reflect that the appellant had been a POW during service. The "Affidavit for Philippine Army Personnel" details the appellant's status from February 1942 until February 1946, but does not mention POW status at all. R. at 23. Also, the April 1976 response by an Army official to VA's request for information did not indicate that the appellant had been a POW. R. at 44.

Second, regarding the other evidence of record, the dates of alleged POW status in the evidence which supports the appellant's contentions vary considerably: the affidavit from two of the appellant's fellow servicemembers stated that they had been interned from September 1942 until March 1943 (R. at 107); in an April 1990 letter, the appellant contended that he had been imprisoned from October 1943 until February 1944 (R. at 142);

and in a November 1991 letter, the appellant wrote that he had been held from April 1942 until October 1943 (R. at 155). Also, as the Board stated, "Although the record indicates that the veteran signed an oath of obedience to the Imperial Japanese Forces occupying the Philippines, there is no showing that this oath was exacted as a condition of release from internment as a [POW]." R. at 8. Therefore, the Board was not clearly erroneous in finding that the appellant did not have POW status during World War II.

### III.

Accordingly, the December 7, 1994, decision of the BVA is AFFIRMED.