**Peter P. LINK, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

**No. 97–459.**

United States Court of Veterans Appeals.

Nov. 18, 1998.

Julie M. Clifford was on reply brief for appellant.

John H. Thompson, Acting General Counsel; Ron Garvin, Assistant General Counsel; Carolyn F. Washington, Deputy Assistant General Counsel; and Karen P. Galla were on brief for appellee.

Before KRAMER, FARLEY, and HOLDAWAY, Judges.

KRAMER, Judge:

The appellant, Peter P. Link, appeals a January 28, 1997, decision of the Board of Veterans' Appeals (BVA or Board) that (1) denied service connection for left ear hearing loss; (2) determined that a claim for service connection for right ear hearing loss was not well grounded; (3) determined that a claim for service connection for a back disability was not well grounded; and (4) denied entitlement to an effective date prior to March 25, 1991, for service connection for retinitis pigmentosa. Record (R.) at 9, 21. The appellant and the Secretary have filed briefs, and the appellant has filed a reply brief. Because the appellant, in his brief, explicitly abandoned the claims regarding hearing loss and a back disability (Appellant's Brief (Br.) at 1), the Court will not review the BVA decision with respect to those claims. *See Ford v. Gober*, 10 Vet.App. 531, 535 (1997); *Grivois v. Brown*, 6 Vet.App. 136, 138 (1994); *Bucklinger v. Brown*, 5 Vet.App. 435, 436 (1993). This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will affirm the decision of the Board. The Court will also dismiss any appeal as to claims for pension benefits and special monthly compensation.

## I. BACKGROUND

The appellant served on active duty in the U.S. Air Force from January 1955 to April 1958. R. at 69. According to the report from an enlistment examination, dated in January 1955, the appellant was noted to have myopia and an uncorrected visual acuity of 20/100. R. at 24–25. After further examination, it was also noted that he had failed a color vision test. R. at 26. His service medical records (SMRs) reflect that, during service, he sought treatment for various visual difficulties (R. at 33, 34, 49–51) and that, in January 1958, he was diagnosed with retinitis pigmentosa (R. at 51). The condition was noted to have existed prior to service. R. at 51. SMRs further reveal that an examiner, in January 1958, stated that "the diagnosis of retinitis pigmentosa is established" and "[i]f there is any progression during his service it would be normal progression since no known duty would cause undue progression." R. at 52. In addition, the examiner opined that the appellant, due to the restriction in his visual fields, was unfit for military service. R. at 52. A medical board subsequently recommended that the appellant be disqualified for full military duty. R. at 60.

In August 1963, the appellant filed an application for compensation or pension for, inter alia, retinitis pigmentosa. R. at 71–74. A VA regional office (RO), in September 1963, denied service connection for retinitis pigmentosa, stating, inter alia, that it is a constitutional abnormality and thus not a disability under the law. R. at 87–88, 90. In that decision, the RO also noted that the appellant's eye condition had not been exacerbated during service. R. at 87. In addition, the RO notified the appellant that his income was "excessive for pension purposes." R. at 90. In July 1978, the appellant submitted another application for compensation or pension for retinitis pigmentosa (R. at 101) and, in response, was notified by the RO that he must submit new and material evidence in order to reopen his claim (R. at 109). In July 1982, the appellant again submitted an application for compensation or pension, apparently seeking non-service-connected pension. R. at 113–16.

In February 1988, the appellant sought to reopen his claim for service connection for retinitis pigmentosa, stating, inter alia, that the claim should be evaluated in accordance with VA General Counsel Precedent Opinion [G.C. Prec.] 1–85 (March 5, 1985). R. at 120–22. An RO decision, dated in March 1988, denied service connection, finding that the appellant's eye condition had existed prior to service and was not aggravated by service. R. at 129–30, 132. The appellant filed a Notice of Disagreement (NOD) (R. at 134); a confirmed RO decision was issued (R. at 140); and a Statement of the Case (SOC) was issued (R. at 143–47). After a hearing before the RO (R. at 180–93), the hearing officer, in February 1989, issued a decision determining that new and material evidence had not been presented to reopen the appellant's claim for service connection for retinitis pigmentosa. R. at 195–96. The hearing officer stated, inter alia, that "[e]ven if we consider the disease to be nonhereditary ... [t]he symptomatology the [appellant] experienced in service is considered to be a natural progression of a preexisting disease process." R. at 196. In response to that decision, the appellant's representative submitted a letter to the RO requesting that the hearing officer reconsider the appellant's claim in light of G.C. Prec. 1–85 and revisions to the VA ADJUDICATION PROCEDURE MANUAL, M21–1 [hereinafter MANUAL M21–1]. R. at 202. A confirmed RO decision was issued in June 1989, noting, inter alia, that the hearing officer, in denying the appellant's claim, had considered G.C. Prec. 1–85 and corresponding MANUAL M21–1 revisions. R. at 207. A subsequent Board decision, dated in December 1989, determined that the appellant had not submitted new and material evidence to reopen his claim for service connection for retinitis pigmentosa. R. at 218, 222–23. The Board also concluded that the evidence showed "that his disability clearly and unmistakably existed prior to service" and that any increase in disability was due to the natural progression of the disease. R. at 223.

In January 1990, the appellant submitted to the Board a motion for reconsideration of the Board's December 1989 decision, contending, inter alia, that the Board had failed to consider G.C. Prec. 1–85 and correspond-ing modifications to the MANUAL M21–1 re-garding the service connectability of congeni-tal disorders. R. at 226–30. The Board granted the motion (R. at 234) and, in a December 1990 reconsideration decision (R. at 289–94), determined that "[a] new factual basis ha[d] not been presented to allow ser-vice connection for retinitis pigmentosa since the unappealed rating action in September 1963." R. at 294. The Board, in the recon-sideration decision, also noted that the appel-lant had argued "that the September 1963 rating action was clearly and unmistakably erroneous in both interpretation of the laws and regulations and in interpretation of the evidence of record." R. at 290; see also R. at 280. The Board then determined that the 1963 RO decision did not contain clear and unmistakable error (CUE), essentially stat-ing that the RO's determination that retinitis pigmentosa had preexisted service and was not aggravated during service was supported by the evidence of record at the time. R. at 293–94. The appellant did not appeal the Board's January 1990 decision.

In March 1991, the appellant submitted a statement in support of claim seeking to have his claim for service connection for retinitis pigmentosa reopened. R. at 318. A con-firmed rating decision was issued in April 1991, stating, inter alia, that the appellant was "again rais[ing] the point that service connection cannot be denied as to retinitis pigmentosa solely on the basis that it is a congenital or developmental abnormality, cit-ing General Counsel opinions to that effect." R. at 325, 327. The appellant filed an NOD as to the denial of reopening (R. at 329), and he filed a claim asserting CUE in the 1963 RO decision, essentially contending that re-tinitis pigmentosa was service connectable at the time of the 1963 decision and that there was no evidence upon which to conclude that the condition had preexisted service (R. at 352). Evidence submitted after the Decem-ber 1990 Board decision included an excerpt from a medical treatise (R. at 296); letters from two doctors essentially stating that the symptoms experienced by the appellant at the time of his enlistment were not necessari-ly indicative of the existence of retinitis pig-mentosa and that he had been first diagnosed

with retinitis pigmentosa during service (R. at 332, 356); and a transcript of the appellant's testimony at a hearing before the Board (R. at 367–463). A Board decision, dated in May 1992, determined that the appellant had submitted new and material evidence to reopen his claim and that service connection for retinitis pigmentosa had been established. R. at 465–70. In August 1992, the RO issued a decision granting a 100% disability rating for retinitis pigmentosa, with an effective date in March 1991. R. at 482–83. The appellant, in September 1992, filed an NOD, seeking an effective date in May 1988 based upon 38 C.F.R. § 3.114(a) (R. at 485), and an SOC was issued (R. at 488). The appellant submitted an additional statement asserting that there had been various errors in the 1963 RO decision (R. at 499–501); a Supplemental SOC was issued (R. at 510); and the appellant submitted a substantive appeal (R. at 524).

In the January 28, 1997, BVA decision here on appeal, the Board initially noted that the appellant had raised to the Board several issues that had not been addressed in the underlying RO decisions, including issues regarding an award of pension benefits. R. at 8. The Board referred those issues to the RO for appropriate action. R. at 8. In addressing the appellant's contentions regarding an earlier effective date for service connection for retinitis pigmentosa, the Board noted that the appellant had alleged that there had been CUE "in all decisions rendered from 1963 to 1992." R. at 9. The Board then concluded that "the Board decisions [between 1963 and 1992] are not subject to review based upon [CUE] and the rating decisions rendered prior to the 1992 Board decision are not subject to attack on the basis of [CUE], as they were subsumed by the Board decisions." R. at 18–19. The Board then determined that "the provisions of 38 C.F.R. § 3.114 are inapplicable" because "[t]he Board's 1992 grant of the claim was not based upon the liberalizing law.... The Board's decision to reopen the claim and subsequently grant it was based solely upon the submission of new and material evidence which tended to show that the veteran's condition [was] incurred during service." R. at 20. Consequently, the Board determined

that "the provisions of 38 C.F.R. § 3.400 are applicable and the proper effective date is March 25, 1991, the date of the reopened claim." R. at 20. This appeal followed.

On appeal, the appellant contends that there was CUE in the 1963 RO decision regarding service connection for retinitis pigmentosa. In this regard, he argues that retinitis pigmentosa was service connectable at that time and that the presumptions of sound condition and aggravation were not applied. Appellant's Br. at 15, 22–23. He further argues that, as a result of various procedural errors, the Board, in December 1990, was without jurisdiction to consider the claim of CUE as to the 1963 RO decision and that the 1990 Board decision on CUE thus does not prohibit him from again raising that claim. Appellant's Br. at 21; Reply Br. at 2, 5. In addition, he argues that the 1990 Board decision did not address the particular claim of CUE that he then raised—that there had been an incorrect application of the law. Reply Br. at 6–7. He contends that the Board instead addressed whether the evidence at that time supported the decision and that his CUE claim thus remains pending. *Id.* He appears to further argue that VA erred in failing to obtain a compensation and pension examination in 1963 and that, due to such failure, the 1963 claim remained unadjudicated until an examination was provided in 1992. Reply Br. at 10. The appellant also appears to argue that there was CUE in the 1963 RO decision regarding claims for non-service-connected pension (Appellant's Br. at 25) and special monthly compensation (Appellant's Br. at 23–24; Reply Br. at 12).

Further, the appellant appears to argue that, even if retinitis pigmentosa was not service connectable at the time of the 1963 adjudication, the Board, in the decision on appeal, erred in concluding that the eventual award of service connection was not "pursuant to" the liberalizing law. Reply Br. at 8–9. He also contends that, due to various procedural deficiencies in RO and Board decisions, the appellant's claim has remained open since 1978 and that the effective date, therefore, should be the date of the 1978 claim. Appellant's Br. at 21. In this regard,

he specifically contends that the notice he received in 1978 informing him that his claim to reopen had been denied did not contain the required notice of appellate rights (Appellant's Br. at 9); that he filed a claim to reopen in 1982 that was not acted upon by the RO (*id.*); that a notice of his appellate rights was not sent to his representative after the 1988 RO decision (*id.*); and that his representative was not notified of the June 1989 RO decision (*id.* at 10). Further, the appellant contends that there were various errors in the 1989 Board decision (Reply Br. at 6); the 1990 Board decision (Appellant's Br. at 11–12; Reply Br. at 4, 7); the 1991 RO decision (Appellant's Br. at 19); and the May 1992 Board decision (Appellant's Br. at 19).

The Secretary contends that "the appellant's grant of service connection ... was premised on new and material evidence and not the liberalizing interpretation of law under which his claim had been previously considered and denied by the BVA in December 1990." Secretary's Br. at 2, 12. In addition, the Secretary argues that review of the 1963 RO decision for CUE "is precluded because that issue was previously considered and denied in the BVA's December 1990 reconsideration decision." *Id.* at 3, 14. The Secretary acknowledges that the appellant could now bring a CUE claim as to the 1990 Board decision but contends that such a claim is not yet before the Court. *Id.* at 15. The Secretary further contends that a claim regarding pension benefits has been referred to an RO for appropriate action and that there is no need for the Court to remand such a claim. *Id.* at 16.

## II. ANALYSIS

### A.

■ One method for establishing an earlier effective date is to show that a prior VA decision contained CUE. A final RO or Board decision must be reversed or amended where evidence establishes CUE. *See* Pub.L. No. 105–111, 111 Stat. 2271 (November 21, 1997) (codified at 38 U.S.C. §§ 5109A, 7111). For CUE to exist:

(1) "[e]ither the correct facts, as they were known at the time, were not before the adjudicator (i.e., more than a simple disagreement as to how the facts were weighed or evaluated) or the statutory or regulatory provisions extant at the time were incorrectly applied," (2) the error must be "undebatable" and of the sort "which, had it not been made, would have manifestly changed the outcome at the time it was made," and (3) a determination that there was CUE must be based on the record and law that existed at the time of the prior adjudication in question.

*Damrel v. Brown,* 6 Vet.App. 242, 245 (1994) (quoting *Russell v. Principi,* 3 Vet.App. 310, 313–14 (1992) (en banc)). Under the principle of res judicata, "[o]nce there is a final decision on the issue of [CUE] ... that particular claim of [CUE] may not be raised again." *Russell,* 3 Vet.App. at 315. On appeal of a BVA determination that there was no CUE in a prior final BVA or RO decision, the Court's review is limited to determining whether the Board's conclusion is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" (38 U.S.C. § 7261(a)(3)(A)) and whether the Board provided an adequate statement of reasons or bases for its denial of CUE. *See Eddy v. Brown,* 9 Vet.App. 52, 57 (1996); *Russell,* 3 Vet.App. at 315.

■ In the decision on appeal, the Board noted that the appellant had alleged, inter alia, that there had been CUE "in all decisions rendered from 1963 to 1992." R. at 9. The Court first notes that, even assuming that the 1963 RO decision has not been subsumed in any subsequent decisions (*see Dittrich v. West,* 11 Vet.App. 10 (1998)), the claim of CUE now raised by the appellant was previously adjudicated by the Board in its December 1990 reconsideration decision. Under the principles of res judicata, the appellant cannot again raise that claim of CUE. *See Russell,* 3 Vet.App. at 315. Further, contrary to the appellant's contentions, a failure in the duty to assist would not have rendered the 1963 RO decision nonfinal and thus still pending at the time of the 1990 Board decision. *See* 38 U.S.C. § 7105(c) ("If no notice of disagreement is filed in accordance with this chapter within the prescribed period, the action or determination shall become final."); *see also Hanson v. Brown,* 9

Vet.App. 29, 31–32 (1996); 38 C.F.R. § 3.160(c) (1998) (defining a pending claim as "[a]n application, formal or informal, which has not been finally adjudicated"). Also, to the extent the appellant contends that the Board, in 1990, did not have jurisdiction to consider the CUE claim, the appellant's claim is without merit. *See Talbert v. Brown*, 7 Vet.App. 352, 356 (1995) (BVA must review all issues which are reasonably raised); *Myers v. Derwinski*, 1 Vet.App. 127, 130 (1991).

■ To the extent that the appellant raises a CUE claim as to the 1978 RO decision that denied reopening, the appellant has not averred such a claim with the specificity required by *Fugo v. Brown*, 6 Vet.App. 40, 44 (1993) ("to reasonably raise CUE there must be some degree of specificity as to what the alleged error is"). To the extent that he raises a CUE claim as to the RO decisions issued in 1988 and 1989, those decisions were rendered nonfinal by the appellant's timely appeal to the Board (*see* 38 U.S.C. § 7105(c); *Smith v. Brown*, 10 Vet.App. 330, 333–34 (1997)), and thus a claim of CUE does not exist, as a matter of law, as to those RO decisions. *See* 38 U.S.C. § 5109A (codifying 38 C.F.R. § 3.105(a) (1998), which provides for CUE claims as to prior final RO decisions); *Best v. Brown*, 10 Vet.App. 322, 325 (1997) (appellant cannot raise CUE claim with respect to rating decision that is not final); *see also Duran v. Brown*, 7 Vet.App. 216, 224 (1994) ("no claim of [CUE] under 38 C.F.R. § 3.105(a) exists as a matter of law" with respect to an RO decision that was "appealed to and affirmed by the Board and thus subsumed in the Board's decision"); 38 C.F.R. § 20.1104 (1997).

■ To the extent that the appellant contends that there was CUE in the 1989 Board decision, the Court notes that that decision has been nullified and replaced by the Board's 1990 reconsideration decision. *See* 38 U.S.C. § 7103(a) (1997); *Smith v. Brown*, 8 Vet.App. 546, 550 (1996) (en banc) (once case is reconsidered by Board, reconsideration decision constitutes final decision of Board and previous Board decision is nullified); 38 C.F.R. § 20.1000 (1997). The 1989 Board decision, therefore, is not subject to a CUE claim. With regard to the Board's 1990 reconsideration decision, the appellant has not raised a CUE claim as to that decision with the specificity required by *Fugo, supra*.

■ To the extent that the appellant avers CUE in the RO decisions issued in 1991, those decisions were rendered nonfinal by the appellant's timely appeal of those decisions to the Board, and thus those decisions also are not subject to CUE claims. *See* 38 U.S.C. §§ 5109A, 7105(c); *Best, supra; see also Duran, supra;* 38 C.F.R. § 20.1104. With regard to the May 1992 Board decision, because that decision granted service connection and did not address the proper effective date to be assigned for the award of service connection, the appellant could not establish an earlier effective date by showing CUE in that decision. Thus, to the extent that he avers CUE in the May 1992 Board decision with regard to his claim for an earlier effective date, such an argument must fail. *See Sabonis v. Brown*, 6 Vet.App. 426, 430 (1994).

The Court further notes, with regard to the appellant's CUE claims as to decisions rendered from 1963 to 1992, that, because there was evidence of record at the time those decisions were rendered that the appellant's condition had existed prior to service (*see* R. at 51) and was not aggravated by service (*see* R. at 52; *see also Moray v. Brown*, 5 Vet.App. 211, 213 (1993) (Court held that diagnoses that appellant's condition during service was "progressive" constituted "specific findings ... that the increase in disability [during service] was due to the natural progress of the disease, and therefore, the veteran's [condition] was not aggravated in service")), there could not have been CUE in those decisions. *See Fugo*, 6 Vet. App. at 43–44 ("[E]ven where the premise of error is accepted, if it is not absolutely clear that a different result would have ensued, the error complained of cannot be, ipso facto, clear and unmistakable."); *cf. Crippen v. Brown*, 9 Vet.App. 412, 422 (1996) (noting that if all the evidence at the time of the RO decision "militated in support of the claim," that could be a basis for finding CUE in the RO's denial of the claim).

### B.

■ Another method for establishing an earlier effective date is for the appellant to demonstrate that, pursuant. to the statute and regulations governing effective dates, the BVA's determination, in the decision on appeal, regarding the proper effective date was clearly erroneous. *See* 38 U.S.C. § 5110; 38 C.F.R. § 3.400 (1998); *see also* 38 U.S.C. § 7261(a)(4); *Hanson,* 9 Vet.App. at 32 (Court reviews a Board determination of effective date under "clearly erroneous" standard of review). In determining whether a finding is clearly erroneous, "this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible basis' in the record for the factual determinations of the BVA ... [the Court] cannot overturn them." *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990); 38 U.S.C. § 7261(a)(4).

Section 5110(a), title 38, United States Code, sets forth this general rule for effective dates:

> (a) Unless specifically provided otherwise in this chapter, the effective date of an award based on ... a claim reopened after final adjudication ... shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.

*See also* 38 C.F.R. § 3.400. Section 5110(g) provides the following exception to the general rule regarding effective dates:

> [W]here compensation ... is awarded or increased pursuant to any Act or administrative issue, the effective date of such award or increase shall be fixed in accordance with the facts found but shall not be earlier than the effective date of the Act or administrative issue. In no event shall such award or increase be retroactive for more than one year from the date of application therefor or the date of administrative determination of entitlement, whichever is earlier.

38 U.S.C. § 5110(g); *see also* 38 C.F.R. § 3.114(a) (1998). In the decision on appeal, the Board determined that 38 U.S.C. § 5110(g) and 38 C.F.R. § 3.114(a) were inapplicable and that, under the general rule for effective dates, the proper effective date was March 25, 1991, the date that the appellant submitted a claim to reopen. R. at 20.

Even assuming that there were liberalizing changes in the law between 1985 and 1990, as the appellant contends, the Court concludes that the Board was not clearly erroneous in determining that, prior to the appellant's 1991 claim to reopen, his claim for service connection for retinitis pigmentosa had been previously considered in light of any such liberalizing changes. In this regard, the Court notes that, although the 1963 RO decision referred to retinitis pigmentosa as a constitutional or developmental disorder, subsequent denials, contrary to the appellant's contentions that his condition was not considered service connectable, were predicated on findings that retinitis pigmentosa had existed prior to service and had not been aggravated during service. *See* R. at 129, 195, 207, 223, 294. Furthermore, the Board, in December 1990, issued a reconsideration decision in response to the appellant's January 1990 motion for reconsideration that specifically sought an adjudication based upon G.C. Prec. 1–85. That decision included a finding that the appellant had not submitted any new evidence demonstrating that his preexisting condition had increased in disability beyond the natural progression of the disease (R. at 294), clearly demonstrating that the Board was rendering a decision based on the premise that the condition was eligible for service connection. Thus, to the extent that the appellant was entitled to an adjudication based upon any liberalizing change, the 1990 Board decision, not the Board decision presently on appeal, provided him with such an adjudication. Therefore, the Court concludes that 38 U.S.C. § 5110(g) and 38 C.F.R. § 3.114(a) are inapplicable. The Court further concludes that there is a plausible basis in the record for the Board's determination that, pursuant to 38 U.S.C. § 5110(a) and 38 C.F.R. § 3.400, the effective date of the award of service connection should be the date of the appellant's March 1991 claim to reopen, in conjunction with which he submitted evidence indicating, for the first time, that his condition did not exist prior to service. *See* 38 U.S.C. § 5110(a); *Flash v. Brown,* 8 Vet.App. 332, 340 (1995)

(when claim to reopen is successful and benefit sought is awarded upon readjudication, effective date is date of claim to reopen); 38 C.F.R. § 3.400(q)(1)(ii).

### C.

█ The appellant, on appeal, contends that he is entitled to an earlier effective date for pension benefits. However, the Board, in the decision on appeal, referred such a claim to an RO for appropriate action. R. at 8. Claims that have been referred by the Board to the RO are not ripe for review by the Court. *See Manibog v. Brown*, 8 Vet.App. 465, 466 (1996); *see also Bagwell v. Brown*, 9 Vet.App. 337, 338 (1996) (issue referred to RO is not on appeal); *Crowe v. Brown*, 7 Vet.App. 238, 248 (1994) (Court lacks jurisdiction over claims not raised to or adjudicated by BVA). Consequently, the Court is without jurisdiction to review any appeal as to the pension claim. Also, to the extent the appellant, on appeal, raises claims regarding special monthly compensation, including a CUE claim, the Court, in the absence of a jurisdiction-conferring NOD as to such claims, is without jurisdiction to consider any appeal with respect to those claims. *See* 38 U.S.C. §§ 7252(a), 7266(a); Pub.L. No. 100–687, § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251); *Horowitz v. Brown*, 5 Vet.App. 217, 225 (1993).

Further, the Court finds no evidence of record that the appellant, in 1982, submitted a claim to reopen his claim for service connection for retinitis pigmentosa. Rather, the only submission in 1982 appears to be an application for non-service-connected pension. *See* R. at 116. It is not clear from the record on appeal whether such a claim was ever adjudicated by the RO, and the Court thus notes that such a claim may remain pending at the RO. *See Kandik v. Brown*, 9 Vet.App. 434, 438 (1996); *Hanson*, 9 Vet. App. at 31–32 (unadjudicated claim normally remains open and pending unless withdrawn).

The appellant further contends, for the first time on appeal, that VA failed properly to notify him or his representative of decisions denying reopening in 1978, 1988, and 1989. He avers that those decisions thus remained open and that the effective date of his award of service connection should be predicated on the date of the claim underlying the 1978 decision. However, because that issue was not mentioned in any filing or testimony related to the appellant's appeal to the Board, such an issue was not reasonably raised to the Board and will not be addressed by the Court on this appeal. *See Horowitz*, 5 Vet.App. at 226; *Herzog v. Derwinski*, 2 Vet.App. 502, 503 (1992) (Court declined to consider matter not raised to Board). Furthermore, even if the issue had been reasonably raised, the appellant has provided no evidence, other than the assertions contained in his brief and reply brief, to support his contentions that he was not properly notified of the decisions in question. *See Ashley v. Derwinski*, 2 Vet.App. 62, 64 (1992) (Court must apply the "presumption of regularity" to " 'the official acts of public officers, and in the absence of clear evidence to the contrary, [must] presume that they have properly discharged their official duties.' ") (quoting *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131 (1926)); *see also Saylock v. Derwinski*, 3 Vet.App. 394, 395 (1992); *Mason v. Brown*, 8 Vet.App. 44, 53–55 (1995). Moreover, the appellant did in fact appeal the 1988 and 1989 RO decisions to the Board, and the Board, in the resulting decision, addressed whether new and material evidence had been submitted since 1963. *See* 38 U.S.C. § 7261(b) (providing that "the Court shall take due account of the rule of prejudicial error"). Finally, to the extent that the appellant has raised additional arguments, such arguments are without merit and need not be addressed.

### III. CONCLUSION

Upon consideration of the above, the Court holds that the appellant has not demonstrated that the BVA committed either factual or legal error that requires reversal or remand. *See* 38 U.S.C. §§ 5107, 7104(d), 7261; *Gilbert*, 1 Vet.App. at 52–53. The January 28, 1997, BVA decision is AFFIRMED. Any appeal as to claims for pension benefits and special monthly compensation is DISMISSED.