SCHOELEN, Judge,
with whom HAGEL, Judge, joins, dissenting:
I respectfully dissent from the majority’s decision because it is based on the erroneous determination that the 1997 Board decision considered the effect of the 1994 liberalizing amendment to 38 C.F.R. § 3.309(c) on Mrs. Brown’s DIC claim. Furthermore, I disagree with the majority’s statement that Mrs. Brown was not awarded DIC “pursuant to” a liberalizing change in the law, because it is clear that her claim was granted both on the basis of the liberalizing change in the law and the new and material evidence she presented. Finally, I believe that the statutory au *298 thority for determining which effective-date provision applies in cases such as this one is ambiguous and I would resolve that ambiguity in favor of Mrs. Brown.
The majority relies almost exclusively on the Court’s decision in Link v. West, 12 Vet.App. 39, 46 (1998), which, without citation to authority or legal analysis, concluded that, because an earlier Board decision had considered the effect of a liberalizing law, 38 U.S.G. § 5110(g) and 38 G.F.R. § 3.114(a) were inapplicable to a later claim. In Link, the Court considered the scope of its prior decision in Spencer (Jesse) v. Brown, 4 Vet.App. 283 (1993), aff'd, 17 F.3d 368 (Fed.Cir.1994). In Spencer, the Court determined that 38 U.S.C. § 5110(g) and 38 C.F.R. § 3.114(a) “require VA to conduct de novo review of a previously and finally denied claim, regardless of whether new and material evidence has been presented or secured, when there has been an intervening liberalizing law or VA issue which may affect the disposition of the claim.” Id. at 288. Although those provisions do not, on their face, require such a de novo readjudication, the Court held that section 5110(g) “presuppose[d] the existence of such a right,” and, thus, provided an exception to the rule of finality contained in 38 U.S.C. § 7104(b). Id.; see also Routen v. West, 142 F.3d 1434, 1441-42 (Fed.Cir.1998) (finding that, “if a new law provides for benefits not previously available, even though grounded on some but not all of the same facts adjudicated under an earlier law, a new cause of action is created along with a new entitlement to a remedy”).
In relying upon Link, the majority bases its decision on the erroneous finding in the Board decision on appeal that the 1997 Board decision considered the effect of the 1994 change in law. See ante at 296-97. Because there is no prior decision that considered the effect of the 1994 amendment to § 3.309(c), Link is inapplicable here and Spencer allows for the application of section 5110(g) and § 3.114(a) to this case.
The majority’s opinion and the Board decision on appeal inaccurately describe the 1997 Board decision as having considered the 1994 liberalizing amendment to § 3.309(c). To reach this conclusion, the majority relies upon the Board’s consideration of Mrs. Brown’s argument that her husband suffered from beriberi heart disease. Ante at 292 (citing R. at 20). Although the Board clearly considered whether Mr. Brown suffered from beriberi heart disease, at no point did the Board consider the amendment to § 3.309(c) stating that beriberi heart disease includes ischemic heart disease in a former POW who had experienced localized edema while in captivity.
The mere consideration of Mrs. Brown’s argument that her husband had beriberi heart disease does not demonstrate that the Board considered the 1994 liberalizing amendment to § 3.309(c) because that amendment did not add beriberi heart disease to the list of conditions for which presumptive service connection is warranted. Presumptive service connection for beriberi heart disease in former POWs has been recognized by statute since 1970. See Pub.L. No. 91-376, § 3, 84 Stat. 787, 788-89 (1970) (adding 38 U.S.C. § 312(b) and (c) (now 38 U.S.C. § 1112(b)) and creating a presumption of service connection for beriberi heart disease in former POWs held in captivity for six months or more). Rather, the liberalizing amendment to § 3.309(c) was based upon scientific studies that recognized the specific connection between localized edema experienced by POWs while in captivity and their later development of beriberi heart disease. 59 Fed.Reg. 35,464-65 (July 12,1994). Based *299 on a review of the entire 1997 Board decision, there is absolutely no indication that the Board considered the 1994 amendment to 38 C.F.R. § 3.309(c). The majority also notes that the 1997 Board decision cited to § 3.309(c). However, that citation refers only to Mrs. Brown’s argument that her husband suffered from beriberi heart disease and not to the 1994 liberalizing amendment. To the extent the Board’s decision on appeal states otherwise (R. at 8), its finding is unsupported by the record and is clearly erroneous.
Further, the 1997 Board decision merely found that Mrs. Brown had not submitted new and material evidence to reopen the Board’s November 1981 denial of her claim for service connection for the cause of her husband’s death. R. at 21. A determination that new and material evidence was not submitted is not a readjudication of the claim on the merits. In fact, where a claimant does not submit new and material evidence to reopen a previously denied claim, readjudication of that claim is generally precluded by statute. See 38 U.S.C. § 5108; Spencer, 4 Vet.App. at 286-88. It necessarily follows that a determination that no new and material evidence had been received by VA is not a de novo readjudication of the claim. As interpreted by Spencer, 4 Vet.App. at 288, 38 U.S.C. § 5110(g) and § 3.114(a) entitle Mrs. Brown to de novo readjudication of her claim on the merits based on the liberalizing change in the law. Because it was merely a determination that she had not submitted new and material evidence, the 1997 Board decision was not a de novo readjudication of her claim.[5] The present claim is the first de novo review of Mrs. Brown’s claim after the enactment of the liberalizing amendment to § 3.309(c), and she is entitled to the application of section 5110(g) and § 3.114(a), pursuant to the Court’s holding in Spencer.
Although, under the caselaw, this finding alone is a sufficient basis to find that section 5110(g) and § 3.114(a) govern the effective date of the award of DIC to Mrs. Brown, analysis of the applicable statutes and regulations provides further support for this view. To begin my analysis, I must respectfully disagree with the majority’s assertion that Mrs. Brown was not awarded DIC “pursuant to” a liberalizing change in the law. This holding stands in contrast to the RO’s decision awarding DIC that, as the Board observed, found that service connection was granted both on the basis of the liberalizing change in the law and the new and material evidence submitted by Mrs. Brown. R. at 7-8 (“The stated basis of the grant of service connection was the application of the liberalizing amendment to 38 C.F.R. § 3.309(c) to the new and material evidence submitted by the appellant.”); R. at 44 (explicitly stating that the RO considered 38 C.F.R. § 3.114(a) in its decision). The new and material evidence described localized edema and was the evidentiary basis on which entitlement to DIC was *300 granted. This evidence only became material because of the liberalizing law, which provided the “substantive basis for establishing entitlement to benefits.” Spencer 4 Vet.App. at 289; see 59 Fed.Reg. 35,464-65 (allowing presumptive service connection for former POWs with ischemic heart disease “who had experienced localized edema during captivity”).
Based upon the finding that Mrs. Brown’s claim was granted both on the basis of the liberalizing law and the new and material evidence she submitted, two separate effective-date provisions are brought into play. The majority’s opinion, ante at 300, sets forth the relevant effective-date provisions, and I need only summarize them here. Under 38 U.S.C. § 5110(a) and 38 C.F.R. § 3.400(q)(l)(ii), the effective date of an award of DIC in a claim to reopen based upon new and material evidence is the date of receipt of the claim or the date the entitlement arose, whichever is later. Under 38 U.S.C. § 5110(g) and 38 C.F.R. § 3.114(a)(3), the effective date of an award of DIC pursuant to a change in the law and where a claim was filed more than one year after the law took effect is one year prior to the date of the claim. In this case, both the effective-date provisions related to new and material evidence and to liberalizing laws are relevant.
As always, the first question in statutory interpretation is “whether Congress has directly spoken to the precise question at issue.” Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). “If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.” Id. When Congress leaves “a gap for an agency to fill,” the agency is authorized to create rules to account for disparities between statutes. See Gallegos v. Principi, 283 F.3d 1309, 1312 (Fed.Cir.2002) (citing Morton v. Ruiz, 415 U.S. 199, 231, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974) (“The power of an administrative agency to administer a congressionally created and funded program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.”)). Similarly, if Congress “does not directly address the precise question at issue,” this Court must give deference to the Secretary’s interpretation of the law. Id. (citing Chevron, 467 U.S. at 843, 104 S.Ct. 2778).
In this case, applying the two relevant statutory provisions individually, the result is clear. Applying 38 U.S.C. § 5110(a), the effective date of Mrs. Brown’s award of DIC would be the date of her claim, April 19, 2001. Applying 38 U.S.C. § 5110(g), the effective date of Mrs. Brown’s award of DIC would be one year prior to the date of her claim, April 19, 2000. Although the application of the two effective-date provisions individually is clear, it is not clear what the appropriate effective date is where an award is based on both the new and material evidence and the liberalizing law. In isolation, each subsection, 38 U.S.C. § 5110(a) and (g), is clear on its face; in a case such as this where both are implicated, the statutory structure becomes ambiguous.[6]
The Secretary’s regulations do nothing to resolve this ambiguity. For the pur *301 pose of determining which effective date provision controls, the regulations do little more than parrot the statutory language. Compare 38 U.S.C. § 5110(a) and (g) with 38 C.F.R. §§ 3.400(q)(l)(ii) and 3.114(a)(3).[7] Moreover, none of this Court’s cases applying section 5110(g) and § 3.114(a) address these circumstances. See, e.g., Bonner v. Nicholson, 19 Vet.App. 188 (2005); Link and Spencer, both supra. But see Routen, 142 F.3d at 1441 (“[I]f a new law provides for benefits not previously available, even though grounded on some but not all of the same facts adjudicated under an earlier law, a new cause of action is created along with a new entitlement to a remedy.” (emphasis added)). The only guidance provided regarding the applicability of section 5110(g) in claims to reopen is a 1995 opinion of the VA General Counsel, who stated the following:
We note initially that section 5110(a) places the same general restriction on reopened claims and claims for increase as it does on original claims. Section 5110(g) provides a specific exception to this general rule in eases involving liberalizing laws. Since, as discussed above, section 5110(g) draws no distinction between original claims and previously! ]denied claims or claims for increase, it provides an exception to section 5110(a) applicable to all three types of claims.
VA Gen. Coun. Prec. 5-94, ¶ 9 (Feb. 18, 1994). In the absence of any statutory or regulatory guidance to the contrary, I find the view of the VA General Counsel that section 5110(g) applies to claims to reopen to be persuasive. See United States v. Mead Corp., 533 U.S. 218, 234-35, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001) (holding, where Chevron deference did not apply, that an agency’s interpretation may be given deference “proportional to its ‘power to persuade’ ” (citing Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944))); Auer v. Robbins, 519 U.S. 452, 461-62, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (holding that an agency’s interpretation of its own regulations is entitled to substantial deference by courts); Smith v. Nicholson, 451 F.3d 1344, 1351 (Fed.Cir.2006) (deferring to VA’s interpretation of its regulations in an opinion of the VA General Counsel). In fact, at oral argument, counsel for the Secretary conceded that section 5110(g) would apply to claims to reopen and tempered her concession only by the Secretary’s (as well as the Board’s and the majority’s) erroneous belief that Mrs. Brown was not awarded DIC pursuant to a liberalizing law.
Finally, this resolution of the ambiguity between the effective-date provisions in section 5110 is consistent with the view of the U.S. Supreme Court that interpretive doubt in veterans benefits statutes is to be resolved in the favor of those beneficiaries. See Brown v. Gardner, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994); King v. St. Vincent’s Hosp., 502 U.S. 215, 220-21 n. 9, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991); Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 285, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946). In this case, it is beyond question that application of this principle would mean that, in the absence of a regulation or other interpretive guidance to the contrary, section 5110(g) and *302 § 3.114(a) would trump section 5110(a) and § 3.400(q)(l)(ii) where they conflict.
Because section 5110(g) is applicable to claims to reopen, following the opinion of the VA General Counsel and resolving interpretive doubt in favor of Mrs. Brown, it becomes clear that section 5110(g) and § 3.114(a) control the award of an effective date in this case. In the absence of any interpretive guidance to the contrary and following the Court’s precedent in Link and Spencer, section 5110(g) and § 3.114(a) govern the award of an effective date for benefits granted pursuant to a liberalizing law, regardless of whether new and material evidence has been submitted, so long as the first de novo readjudication of the claim (meaning an adjudication on the merits) results in the award of benefits.[8]
During his 15 years of service, including service during the Korean War, Johnnie Brown was held as a POW for nearly three years. The statement of Mr. Nix describes the conditions under which he and Mr. Brown were held:
For our food[,] we were given only cracked corn, millet and some rice. There were some 1,602 prisoners [who] died during this period. Johnn[ie] was seriously ill during the Spring! ] of 1951 for several weeks and his medical conditions went unattended. I saw his feet, ankles and lower legs swell and crack open on several occasions while we were prisoners of war.
R. at 39. In 1978, 25 years after his release, Mr. Brown died, presumably as a result of the conditions under which he was held as a POW. See 59 Fed.Reg. 35,-464-65. For over 21 years, Mrs. Brown filed multiple claims with VA seeking service connection for the cause of her husband’s death. R. at 49. The RO finally awarded service connection based upon both the statement of Mr. Nix and the liberalizing change to § 3.309(c). The RO’s July 2001 decision was the first de novo adjudication of Mrs. Brown’s claim after the relevant liberalizing change in the law. Based upon section 5110(g) and § 3.114(a), Mrs. Brown is entitled to an effective date of one year prior to the date *303 she filed her claim. In fact, with the benefit of Mr. Nix’s statement and VA’s recognition of the connection between localized edema in captivity and ischemic heart disease, we now know that Mrs. Brown factually met the requirements for DIC since she first filed her claim in 1980. Under the law, we cannot grant Mrs. Brown retroactive entitlement to DIC back to the date of her original claim. However, she is entitled to the benefit of section 5110(g) and § 8.114(a). Based upon the foregoing, I would reverse the Board’s effective-date determination and direct the Board to award an effective date of April 19, 2000, for the award of service connection for Mr. Brown’s cause of death.[9] I respectfully dissent from the majority’s contrary decision.

. The failure by the Board to readjudicate Mrs. Brown's claim on the merits was not itself error. Because there was no evidence of record at the time indicating that Mr. Brown suffered from localized edema while in captivity and because Mrs. Brown did not argue that the liberalizing change was applicable, there was no reason for the Board in 1997 to consider the 1994 liberalizing amendment to § 3.309(c). The liberalizing amendment to § 3.309(c) did not become relevant until Mrs. Brown submitted the statement of Mr. Nix in 2001. Because the 1994 liberalizing amendment was not relevant to the Board’s 1997 decision, the Board had no obligation to consider the amendment in its 1997 decision, and the presumption of administrative regularity is not applicable. See ante at 296 & n. 3 (relying on the presumption of administrative regularity to hold that the Board considered the 1994 liberalizing amendment).

. This case provides further evidence that “statutory ambiguity is not an absolute conclusion, but is a case-by-case determination as to whether the language answers the particular question presented. Hence, statutory language that plainly answers one question may still be ambiguous when applied to another.” Haas v. Nicholson, 20 Vet.App. 257, 262 n. 2 (2006).

. One notable difference between 38 U.S.C. § 5110(g) and 38 C.F.R. § 3.114(a)(3) is that the regulation uses discretionary language, whereas the statute contains no discretionary language. The regulation provides no guidance on when an earlier effective date “may be authorized” and when it may not. It is not clear that, by regulation, the Secretary may grant himself discretion where Congress has expressly used the word "shall” in section 5110(g).

. Sitting en banc, however, I note that we are not necessarily bound by the Court’s holding in Link. See Harms v. Nicholson, 20 Vet.App. 238, 245 n. 7 (2006) (en banc) (noting that the full Court is not bound by prior decisions of this Court); Bethea v. Derwinski, 2 Vet.App. 252, 254 (1992) ("Only the en banc Court may overturn a panel decision.”). Were it necessary to decide this case, I believe reconsideration of the Court's holding in Link would be warranted. As I stated above, in holding that section 5110(g) and § 3.114(a) only provide a single opportunity to receive an effective date of one year prior to the date of claim, the Court in Link failed to cite to any authority or to engage in any legal analysis to support its holding. The majority’s opinion follows Link and similarly does not cite to any authority or engage in legal analysis to support its conclusion. I believe that the statutory analysis in this dissenting opinion would apply regardless of whether there was a prior adjudication of a claim that considered the liberalizing law because there is nothing in section 5110(g) or § 3.114(a) that limits the scope of those effective-date provisions to the first readjudication of the claim after the enactment of the liberalizing law. Nonetheless, because my entire analysis is based upon the premise that the intent of Congress is ambiguous in cases where benefits are awarded based on both a liberalizing law and new and material evidence, the Secretary is free to issue regulations to fill this gap in the statute and the Court must defer to such regulations so long as they are reasonable interpretations of the applicable statutes. See Chevron, 467 U.S. at 844-45, 104 S.Ct. 2778; Gallegos, 283 F.3d at 1312. In this case, there is no doubt that the result reached by the Court in Link and by the majority in this case would be a reasonable interpretation of the statute had it been issued by the Secretary. However, 38 U.S.C. § 501(a) leaves those policy determinations to the Secretary and not to the Court.

. I would reverse the Board’s decision notwithstanding Mrs. Brown’s counsel’s statements at oral argument expressly seeking va-catur and remand rather than reversal. See also Appellant’s Br. at 9 (requesting that the Court "vacate the Board’s decision and remand with an instruction that the Board consider whether Mrs. Brown is entitled to an earlier effective date of April 19, 2000, pursuant to 38 C.F.R. § 3.114(a)(3)”); Reply Br. at 3 (stating essentially the same). Whether section 5110(g) and § 3.114(a) are applicable to this case is purely a question of law. Once that is decided, there are no disputed facts pertinent to the application of those provisions. If they do not apply (as the majority holds), Mrs. Brown is entitled to DIC effective no earlier than the date of her claim to reopen as a matter of law. If they do apply (as I would hold), Mrs. Brown is entitled to DIC effective one year prior to the date of her claim based on an application of the undisputed facts of this case to § 3.114(a)(3). Thus, reversal, not vacatur, would be the appropriate remedy for the Board’s error. Remand for the Board to apply the regulation in the first instance to the undisputed facts of this case "would result in this Court’s unnecessarily imposing additional burdens on the B[oard] and [the Secretary] with no benefit flowing to the [claimant].” Soyini v. Derwinski, 1 Vet.App. 540, 546 (1991); see Cantu v. Principi, 18 Vet.App. 92, 99-100 (2004) (applying the plain meaning of a regulation to undisputed facts to determine that the appellant met the eligibility criteria for VA health care, notwithstanding the appellant’s argument that vacatur was warranted because the Board did not make pertinent findings of fact regarding the issue).