# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 04-0418

VOLA M. BROWN, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued October 17, 2005                    Decided May 31, 2007  )

*Donald E. Purcell*, of Washington, D.C., for the appellant.

*Pamela Nash*, with whom *Tim S. McClain,* General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Richard Mayerick*, Deputy Assistant General Counsel; and *Robert W. Legg* were on the brief, all of Washington, D.C., for the appellee.

Before GREENE, *Chief Judge*, and KASOLD, HAGEL, MOORMAN, LANCE, DAVIS, and SCHOELEN, *Judges*.

DAVIS, *Judge*, filed the opinion of the Court.  SCHOELEN, *Judge*, filed a dissenting opinion in which HAGEL, *Judge*, joined.

DAVIS, *Judge*: Appellant Vola M. Brown, through counsel, appeals from a November 18, 2003, Board of Veterans' Appeals (Board or BVA) decision that denied entitlement to an effective date earlier than April 19, 2001, for her award of dependency and indemnity compensation (DIC) benefits.  A three-judge panel of the Court heard oral argument on October 17, 2005.  On November 14, 2006, this case was submitted to the en banc Court.  On appeal, the Court must determine whether the Board erred by failing to address the effective-date provision contained in 38 C.F.R. § 3.114(a)(3) (2006), which provides for an effective date of one year prior to the date of the claim if benefits are awarded pursuant to a liberalizing law.  For the reasons set forth below, the Court will affirm the November 2003 Board decision.

# I. BACKGROUND

The veteran, Johnnie C. Brown, served on active duty from July 1948 to November 1953 and from December 1953 to August 1968. Between November 1950 and September 1953, during the Korean War, he was a prisoner of war (POW). He died on November 10, 1978, as a result of "acute myocardial infarction" due to "atherosclerotic heart disease." Record (R.) at 33.

The appellant is the veteran's surviving spouse. In November 1981, the Board denied her original claim for service connection for the cause of the veteran's death. In May 1994, the Chicago, Illinois, VA regional office (RO) denied the appellant's attempt to reopen her claim. She appealed that decision to the Board. While her appeal was pending, in July 1994, § 3.309(c) of title 38, Code of Federal Regulations, was amended effective August 24, 1993. That amendment provided for presumptive service connection for certain diseases manifesting in former POWs and stated: "NOTE: For purposes of this section, the term *beriberi heart disease* includes ischemic heart disease in a former prisoner of war who had experienced localized edema during captivity."[1] 59 Fed. Reg. 35,464 (1994).

Following an appeal, in a February 1997 decision, the Board concluded that new and material evidence had not been presented sufficient to reopen her claim. In reaching its conclusion, the Board reviewed the evidence submitted since the previous denial, including numerous declassified service department records that were, ultimately, not relevant to the appellant's claim, and statements, dated May 1994 and January 1995, in which the appellant claimed that the veteran suffered from beriberi disease. With respect to the evidence provided after the previous denial, the Board stated:

> The appellant has suggested that the veteran may have had beri-beri heart disease, a disease for which presumptive service connection for former [POW]s is recognized. 38 C.F.R. § 3.309(c). Available records, however, make no mention of this condition, and none have [been] presented to support this contention.

R. at 20. The appellant did not appeal that decision.

On April 19, 2001, she again sought to reopen her claim. She submitted an April 2001 statement from Henry E. Nix, a serviceman who was a POW with the veteran. Mr. Nix reported

---

[1]"Ischemic heart disease" is a synonym for "arteriosclerotic heart disease." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 528 (30th ed. 2003).

that, while he and the veteran were POWs, he saw the veteran's "feet, ankles and lower legs swell and crack open on several occasions." R. at 39.

In July 2001, the RO granted the appellant's claim because the new evidence showed localized edema in service and established a presumption of ischemic heart disease. The RO noted that the appellant's claim had been reviewed after the amendment to 38 C.F.R. § 3.309(c), but concluded that, at that time, no evidence had been presented showing beriberi or localized edema, and thus, the claim had been denied. However, the RO noted that new evidence showed localized edema, thus implicating a presumption of ischemic heart disease. The RO concluded that the veteran's death was service connected. Regarding the effective date, the RO decision stated:

> Service connection for the cause of death is now established based upon the new and material evidence received in April of this year. The effective date of entitlement to [DIC] and [educational benefits] is the date of the current claim [(i.e., April 19, 2001)]. Consideration for an earlier effective date under 38 C.F.R. § 3.114(a) has been given, but the change in the decision is based upon new evidence received after the liberalizing changes in the law and regulations.

R. at 44. The appellant filed a Notice of Disagreement as to the effective date. The RO subsequently issued a Statement of the Case (SOC), noting that

> [a]lthough the claim was reviewed after the change in laws with respect to POWs and heart disease, no evidence had been furnished to suggest the presence of beriberi and/or localized edema during captivity, and the claim remained in denied status. The new evidence from the veteran's fellow POW established a new factual basis for reconsideration of the claim. . . . Consideration of an earlier effective date under 38 C.F.R. § 3.114 has been given but the change in the decision is based upon new evidence received after the liberalizing changes in law and regulations.

R. at 74.

On November 18, 2003, the Board issued the decision here on appeal. Therein, the Board upheld the April 19, 2001, effective date, noting that the effective date cannot be earlier than the date of the appellant's claim to reopen. R. at 8-9 (citing 38 U.S.C. § 5110(a) and 38 C.F.R. § 3.400(q)(1)(ii) (2003)).[2] The Board determined that the RO had reopened the previously denied claim based on both the statement of Mr. Nix and the amendment to § 3.309(c). The Board

_____

[2]Generally, section 5110(a) and § 3.400(q)(1)(ii) provide that, if an award for benefits is made as a result of new and material evidence, the claimant is entitled to an effective date no earlier than the date of the claim. *See* 38 U.S.C. § 5110(a), 38 C.F.R. § 3.400(q)(1)(ii) (2006).

concluded that the effective date could be no earlier than the date of the April 19, 2001, claim to reopen because the claim was eventually granted based on the new and material evidence submitted on that date. As to the appellant's argument that the liberalizing law ultimately resulted in the grant of her claim, the Board reasoned:

> [I]t is noted in that regard that the liberalizing amendment in question was considered in the Board's February 1997 decision which determined that new and material evidence had not been submitted showing that the requirements of amended 38 C.F.R. § 3.309(c) had been met. The Board's 1997 decision remains final.

R. at 8. Thus, the Board determined that, absent a motion for revision based on clear and unmistakable error (CUE) in a prior decision, "or unless the new and material evidence resulted from correction of military records," the effective date is set by section 5110(a) and § 3.400(q)(1)(ii), and the RO decision as to the effective date must be upheld. R. at 8-9. This appeal ensued.

## II. CONTENTIONS ON APPEAL

Before the Court, the appellant argues that she may be entitled to an earlier effective date pursuant to 38 C.F.R. § 3.114(a)(3). She contends that, because her appeal involved the effective date of her claim, the Board in 2003 provided inadequate reasons or bases by failing to address the liberalizing-law effective-date regulation. Therefore, she argues that this Court should vacate the Board decision, "with an instruction that the Board consider whether Mrs. Brown is entitled to an earlier effective date of April 19, 2000, pursuant to 38 C.F.R. § 3.114(a)(3)." Appellant's Brief (Br.) at 9.

In response, the Secretary argues that, as a matter of law, the Board decision should be affirmed. The Secretary submits that the liberalizing amendment to § 3.309(c) was considered in the Board's February 1997 decision, however, the Board denied the appellant's claim because, even with the favorable change in the law, there was insufficient evidence of the veteran's edema in service. Thus, the Secretary contends that, when the claim was finally granted in July 2001 after the submission of new and material evidence, "[t]he effective[-]date regulation governing a grant based upon new and material evidence, found at 38 C.F.R. § 3.400(q)(1)(ii) controls, and not the effective [-]date regulation that governs a grant based upon a change in regulation, 38 C.F.R. § 3.114." Secretary's Br. at 5-6.

4

## III. ANALYSIS

### A. Law

In general, the effective date for an award of benefits will be based on the date of the claim that resulted in that award. *See Williams v. Principi*, 15 Vet.App. 189, 195 (2001) (en banc), *aff'd*, 310 F.3d 1374 (Fed. Cir. 2002); *Lalonde v. West*, 12 Vet.App. 377, 380 (1999). However, section 5110(g), title 38, U.S. Code, provides an exception to the general rule that, in relevant part, states:

> [W]here compensation, [DIC], or pension is awarded or increased pursuant to any Act or administrative issue, the effective date of such award or increase shall be fixed in accordance with the facts found but shall not be earlier than the effective date of the Act or administrative issue. In no event shall such award or increase be retroactive for more than one year from the date of application therefor or the date of administrative determination of entitlement, whichever is earlier.

38 U.S.C. § 5110(g).

VA's implementing regulations reflect the exceptions to the general rule, setting forth, under 38 C.F.R. § 3.400, various effective-date provisions. Pertinent to the instant case, 38 C.F.R. § 3.400(q)(1)(ii) governs the effective date of a claim reopened "after final disallowance" based upon the submission of new and material evidence–it is either the "[d]ate of receipt of the new claim, or [the] date entitlement arose, *whichever is later*." 38 C.F.R. § 3.400(q)(1)(ii) (2006) (emphasis added); *see Link v. West*, 12 Vet.App. 39, 46 (1998). Also relevant here, § 3.400(p) directs that, in order to determine the appropriate effective date of a claim granted as a result of a favorable change in the law, the reader must "[*s*]*ee* [38 C.F.R. ]§ 3.114." In turn, § 3.114 dictates that the effective date for a claim granted based on that favorable change in law cannot be earlier than the effective date of the liberalizing law or VA regulation; however, where a claimant requests review of the claim more than a year after the amendment, "benefits may be authorized" for up to one year prior to VA's receipt of the claim. 38 C.F.R. § 3.114.

The Board's effective-date determination is reviewed under the "clearly erroneous" standard of review set forth in 38 U.S.C. § 7261(a)(4). *See Bonner v. Nicholson*, 19 Vet.App. 188, 193 (2005); *Hanson v. Brown*, 9 Vet.App. 29, 32 (1996). "'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Gilbert v. Derwinski,* 1 Vet.App. 49, 52 (1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). If the Board's

"'account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it.'" *Gilbert*, 1 Vet.App. at 52 (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985)).

## B. Application of § 3.114(a)(3)

In its 2003 decision, the Board determined that the effective date for the appellant's DIC benefits could be no earlier than the date of the claim in accordance with the new-and-material-evidence effective-date regulation (as opposed to the liberalizing-law effective-date regulation, which would have allowed an effective date one year prior to the date of the claim). In support of its determination, the Board reasoned that the claim was granted on the basis of the new and material evidence provided.

As noted above, the Secretary promulgated regulations in accordance with section 5110(g), which allow an effective date one year earlier than the date of the claim if benefits were granted "pursuant to a liberalizing law." 38 C.F.R. § 3.114(a). Although the term "liberalizing law" remains undefined in VA regulations, this Court and the United States Court of Appeals for the Federal Circuit have determined that a liberalizing law is "one which brought about a substantive change in the law creating a new and different entitlement to a benefit." *Spencer (Donald) v. Brown*, 17 F.3d 368, 372 (Fed. Cir. 1994); *see also Routen v. West*, 142 F.3d 1434, 1441 (Fed. Cir. 1998) ("If a new law provides for benefits not previously available, even though grounded on some but not all of the same facts adjudicated under an earlier law, a new cause of action is created along with a new entitlement to a remedy."); *Green v. Brown*, 10 Vet.App. 110, 116 (1997); *Spencer (Jesse) v. Brown*, 4 Vet.App. 283, 288-89 (1993), *aff'd*, 17 F.3d 368 (Fed. Cir. 1994).

The Board decision here on appeal recognized that the 1994 amendment to § 3.309(c) was "liberalizing," because it "recognized for the first time a causal connection between episodes of localized edema during captivity and the subsequent development of ischemic heart disease in former [POWs], such as the veteran[,] and permitted presumptive service connection for ischemic heart disease of a former [POW]." R. at 6. We agree.

However, the Court's analysis cannot end there. The plain language of the statute and its implementing regulation require two specific findings: A finding that a liberalizing law or administrative issue was implemented, as well as a determination that the ultimate grant of benefits was "pursuant to" such a favorable change in the law. Because the appellant's previous attempt to

6

reopen her claim was rejected despite promulgation of the liberalizing amendment to § 3.309(c), the Court is presented with a question as to whether the grant of benefits was "pursuant to" the 1994 amendment, or, simply, the submission of new and material evidence. 38 U.S.C. § 5110(g); 38 C.F.R. § 3.114(a). Specifically, the Court must consider whether the intervening 1997 Board decision rendered § 3.114(a)(3), and the retroactive assignment of an effective date, inapplicable. For the following reasons, the Court holds that § 3.114 was not applicable to the appellant's claim, and it was not error for the Board to omit discussion of an earlier effective date in accordance with that regulation.

The view that there is an indefinite duration for the applicability of section 5110(g) and § 3.114(a) is contrary to this Court's precedent. In *Link*, 12 Vet.App. at 41, the appellant filed a service-connection claim for an eye condition in 1963, which was denied because the RO noted that the eye condition had not been aggravated during service. In March 1985, the VA General Counsel issued an opinion recognizing service connection for congenital disorders. *Id*. at 42. On the basis of that opinion, Mr. Link sought to reopen his claim; a hearing officer denied that claim, and a 1989 RO decision, a 1989 Board decision, and a 1990 Board reconsideration decision affirmed that denial, determining that Mr. Link had not presented new and material evidence to reopen his claim. *Id*. The appellant again sought to reopen his claim in 1991 by providing new and material evidence, and in 1992, the claim was reopened and an effective date of March 1991 was established. *Id*. at 42-43. The *Link* Court noted that, even if there were liberalizing changes in the law between 1985 and 1990, prior to the 1991 claim to reopen, the appellant's claim had previously been considered in light of such liberalizing changes. *Id*. at 46. The Court concluded that, "to the extent that the appellant was entitled to an adjudication based upon any liberalizing change, the 1990 Board decision, not the Board decision presently on appeal, provided him with such an adjudication." *Id.* The Court thus determined that section 5110(g) and § 3.114(a) were inapplicable. *Id.*

To receive the benefit of section 5110(g) and § 3.114, a claim must be granted "pursuant to" a liberalizing law. Section 5110(g) states, in pertinent part: "[W]here . . . [DIC] . . . is awarded . . . *pursuant to* any Act or administrative issue, the effective date of such award or increase shall be fixed in accordance with the facts found . . . ." 38 U.S.C. § 5110(g) (emphasis added). In other words, the plain language of the statute and implementing regulation § 3.114(a)(3) contemplate a cause-and-effect relationship between the passage or promulgation of a liberalizing law, and a

subsequent review of a prior final decision on a claim for benefits. Pertinent to this case, this Court consistently has held that where there is no additional change in law following a final decision that *has considered* a liberalizing regulation, a subsequent award would not have been made "pursuant to" the act or administrative issue that is the subject of a claimant's challenge under § 3.114(a)(3). *See Spencer (Jesse)*, 4 Vet.App. at 289 ("The use of the words 'pursuant to' clearly indicates that the benefits of this provision adhere only where the 'Act or administrative issue' is one which provides a substantive basis for establishing entitlement to benefits."); *see also Bonner, supra; Green,* 10 Vet.App. at 116. In other words, where there is no change in law following a final decision, section 5110(g) cannot apply, because an award has not been made "pursuant to" an act or administrative issue.

Based on the facts of the present case, the Court concludes that § 3.114(a)(3) was not available for application because benefits were not awarded in 1997 when the amended regulation was first considered, and also, that there was no additional change in law following the 1997 decision denying the appellant's claim. There is no dispute that her claim to reopen her DIC claim was denied in a 1997 Board decision, three years after promulgation of the amendment to § 3.309(c). The Board in 1997 cited to § 3.309(c) in its decision (*see* R. at 19-20), and there is no evidence that the 1994 liberalizing changes to that regulation were not applied by the 1997 Board to Mrs. Brown's claim.[3] *See Dolan v. Brown*, 9 Vet.App. 358, 362 (1996) (concluding that VA has duty to consider any presumption that may be applicable to a veteran's claim and, in the absence of "clear evidence" to the contrary, is presumed to have done so); *see also Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991) (Board must consider all potentially applicable laws and regulations); 38 U.S.C. § 7104(a) (Board decision to be based on consideration of all "applicable provisions of law and regulation"). There is also no dispute that the appellant did not appeal that decision and it became final. As in *Link*, an earlier decision provided the appellant with an adjudication based on the liberalizing change. *See Link*, *supra*.

---

[3]The dissent contends that "there is absolutely no indication that the Board considered the 1994 amendment to 38 C.F.R. § 3.309(c)"; however, in the absence of clear evidence that the Board did *not* consider that regulation, we must presume that by citing § 3.309(c), the Board considered the whole and correct version of the regulation, including the 1994 amendment. *See Marsh v. Nicholson*, 19 Vet.App. 381 (2005) ("There is a presumption of regularity that public officers perform their duties 'correctly, fairly, in good faith, and in accordance with law and governing regulations.'" (quoting *Ala. Airlines, Inc. v. Johnson*, 8 F.3d 791, 795 (Fed. Cir. 1993))).

The only difference between the Board's 1997 decision and the decision on appeal is the consideration of the new evidence supplied by the appellant. While the appellant derived some benefit from the liberalizing amendment to § 3.309(c), the ultimate award of benefits was not "pursuant to" the change in law; rather, the award was made pursuant to the submission of the new evidence–evidence that was not before the Board in 1997–that her husband suffered from localized edema while a POW.[4] Based on that new evidence, the RO granted service connection and assigned the earliest possible effective date for the award of DIC benefits–April 19, 2001. Based on the foregoing, the 2003 Board's affirmance of that date was not clearly erroneous.

### C. Statement of Reasons or Bases

The Board is required to consider all evidence of record and to consider, and discuss in its decision, all "potentially applicable" provisions of law and regulation. *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991); *see* 38 U.S.C. § 7104(a); *Charles v. Principi*, 16 Vet.App. 370, 373 (2002); *Weaver v. Principi*, 14 Vet.App. 301, 302 (2001) (per curiam order); *Sanden v. Derwinski*, 2 Vet.App. 97, 100 (1992). The appellant argues that the Board provided an inadequate statement of reasons or bases because it failed to address § 3.114. Because the Court concludes that § 3.114(a)(3) was inapplicable when determining the effective date for the award of DIC benefits because of the intervening Board decision, the Board did not err in failing to discuss that regulation.

### IV. CONCLUSION

On the basis of the foregoing, the record on appeal, and the parties' submissions and presentations at oral argument, the November 18, 2003, Board decision is AFFIRMED.

SCHOELEN, *Judge*, with whom HAGEL, *Judge*, joins, dissenting: I respectfully dissent from the majority's decision because it is based on the erroneous determination that the 1997 Board decision considered the effect of the 1994 liberalizing amendment to 38 C.F.R. § 3.309(c) on Mrs. Brown's DIC claim. Furthermore, I disagree with the majority's statement that Mrs. Brown was not awarded DIC "pursuant to" a liberalizing change in the law, because it is clear that her claim was

---

[4]The dissent contends that we should afford deference to VA's determination that 38 U.S.C. § 5110(g) applies in claims to reopen, and we disagree with neither that proposition, nor with the proposition that VA's regulations become ambiguous when both the liberalizing-law effective-date provision and the new-and-material-evidence provision apply. However, because the appellant's claim was ultimately granted based solely on new and material evidence, only the new-and-material-evidence effective-date provision applies here.

9

granted *both* on the basis of the liberalizing change in the law *and* the new and material evidence she presented. Finally, I believe that the statutory authority for determining which effective-date provision applies in cases such as this one is ambiguous and I would resolve that ambiguity in favor of Mrs. Brown.

The majority relies almost exclusively on the Court's decision in *Link v. West*, 12 Vet.App. 39, 46 (1998), which, without citation to authority or legal analysis, concluded that, because an earlier Board decision had considered the effect of a liberalizing law, 38 U.S.C. § 5110(g) and 38 C.F.R. § 3.114(a) were inapplicable to a later claim. In *Link*, the Court considered the scope of its prior decision in *Spencer (Jesse) v. Brown*, 4 Vet.App. 283 (1993), *aff'd*, 17 F.3d 368 (Fed. Cir. 1994). In *Spencer*, the Court determined that 38 U.S.C. § 5110(g) and 38 C.F.R. § 3.114(a) "require VA to conduct de novo review of a previously and finally denied claim, regardless of whether new and material evidence has been presented or secured, when there has been an intervening liberalizing law or VA issue which may affect the disposition of the claim." *Id.* at 288. Although those provisions do not, on their face, require such a de novo readjudication, the Court held that section 5110(g) "presuppose[d] the existence of such a right," and, thus, provided an exception to the rule of finality contained in 38 U.S.C. § 7104(b). *Id.*; *see also Routen v. West*, 142 F.3d 1434, 1441-42 (Fed. Cir. 1998) (finding that, "if a new law provides for benefits not previously available, even though grounded on some but not all of the same facts adjudicated under an earlier law, a new cause of action is created along with a new entitlement to a remedy").

In relying upon *Link*, the majority bases its decision on the erroneous finding in the Board decision on appeal that the 1997 Board decision considered the effect of the 1994 change in law. *See ante* at __, slip op. at 8-9. Because there is no prior decision that considered the effect of the 1994 amendment to § 3.309(c), *Link* is inapplicable here and *Spencer* allows for the application of section 5110(g) and § 3.114(a) to this case.

The majority's opinion and the Board decision on appeal inaccurately describe the 1997 Board decision as having considered the 1994 liberalizing amendment to § 3.309(c). To reach this conclusion, the majority relies upon the Board's consideration of Mrs. Brown's argument that her husband suffered from beriberi heart disease. *Ante* at __, slip op. at 2 (citing R. at 20). Although the Board clearly considered whether Mr. Brown suffered from beriberi heart disease, at no point

10

did the Board consider the amendment to § 3.309(c) stating that beriberi heart disease includes ischemic heart disease in a former POW who had experienced localized edema while in captivity.

The mere consideration of Mrs. Brown's argument that her husband had beriberi heart disease does not demonstrate that the Board considered the 1994 liberalizing amendment to § 3.309(c) because that amendment did not add beriberi heart disease to the list of conditions for which presumptive service connection is warranted. Presumptive service connection for beriberi heart disease in former POWs has been recognized by statute since 1970. *See* Pub. L. No. 91-376, § 3, 84 Stat. 787, 788-89 (1970) (adding 38 U.S.C. § 312(b) and (c) (now 38 U.S.C. § 1112(b)) and creating a presumption of service connection for beriberi heart disease in former POWs held in captivity for six months or more). Rather, the liberalizing amendment to § 3.309(c) was based upon scientific studies that recognized the specific connection between localized edema experienced by POWs while in captivity and their later development of beriberi heart disease. 59 Fed. Reg. 35,464-65 (July 12, 1994). Based on a review of the entire 1997 Board decision, there is absolutely no indication that the Board considered the 1994 amendment to 38 C.F.R. § 3.309(c). The majority also notes that the 1997 Board decision cited to § 3.309(c). However, that citation refers only to Mrs. Brown's argument that her husband suffered from beriberi heart disease and not to the 1994 liberalizing amendment. To the extent the Board's decision on appeal states otherwise (R. at 8), its finding is unsupported by the record and is clearly erroneous.

Further, the 1997 Board decision merely found that Mrs. Brown had *not* submitted new and material evidence to reopen the Board's November 1981 denial of her claim for service connection for the cause of her husband's death. R. at 21. A determination that new and material evidence was not submitted is not a readjudication of the claim on the merits. In fact, where a claimant does not submit new and material evidence to reopen a previously denied claim, readjudication of that claim is generally precluded by statute. *See* 38 U.S.C. § 5108; *Spencer*, 4 Vet.App. at 286-88. It necessarily follows that a determination that no new and material evidence had been received by VA is not a de novo readjudication of the claim. As interpreted by *Spencer*, 4 Vet.App. at 288, 38 U.S.C. § 5110(g) and § 3.114(a) entitle Mrs. Brown to de novo readjudication of her claim on the merits based on the liberalizing change in the law. Because it was merely a determination that she had not submitted new and material evidence, the 1997 Board decision was not a de novo

readjudication of her claim.[5]  The present claim is the first de novo review of Mrs. Brown's claim after the enactment of the liberalizing amendment to § 3.309(c), and she is entitled to the application of section 5110(g) and § 3.114(a), pursuant to the Court's holding in *Spencer*.

Although, under the caselaw, this finding alone is a sufficient basis to find that section 5110(g) and § 3.114(a) govern the effective date of the award of DIC to Mrs. Brown, analysis of the applicable statutes and regulations provides further support for this view.  To begin my analysis, I must respectfully disagree with the majority's assertion that Mrs. Brown was not awarded DIC "pursuant to" a liberalizing change in the law.  This holding stands in contrast to the RO's decision awarding DIC that, as the Board observed, found that service connection was granted *both* on the basis of the liberalizing change in the law *and* the new and material evidence submitted by Mrs. Brown.  R. at 7-8 ("The stated basis of the grant of service connection was the application of the liberalizing amendment to 38 C.F.R. § 3.309(c) to the new and material evidence submitted by the appellant."); R. at 44 (explicitly stating that the RO considered 38 C.F.R. § 3.114(a) in its decision). The new and material evidence described localized edema and was the evidentiary basis on which entitlement to DIC was granted.  This evidence only became material *because of* the liberalizing law, which provided the "substantive basis for establishing entitlement to benefits." *Spencer* 4 Vet.App. at 289; *see* 59 Fed. Reg. 35,464-65 (allowing presumptive service connection for former POWs with ischemic heart disease "who had experienced localized edema during captivity").

Based upon the finding that Mrs. Brown's claim was granted both on the basis of the liberalizing law and the new and material evidence she submitted, two separate effective-date provisions are brought into play.  The majority's opinion, *ante* at __, slip op. at 5, sets forth the relevant effective-date provisions, and I need only summarize them here.  Under 38 U.S.C. § 5110(a) and 38 C.F.R. § 3.400(q)(1)(ii), the effective date of an award of DIC in a claim to reopen based upon new and material evidence is the date of receipt of the claim or the date the entitlement arose,

---

[5] The failure by the Board to readjudicate Mrs. Brown's claim on the merits was not itself error.  Because there was no evidence of record at the time indicating that Mr. Brown suffered from localized edema while in captivity and because Mrs. Brown did not argue that the liberalizing change was applicable, there was no reason for the Board in 1997 to consider the 1994 liberalizing amendment to § 3.309(c).  The liberalizing amendment to § 3.309(c) did not become relevant until Mrs. Brown submitted the statement of Mr. Nix in 2001.  Because the 1994 liberalizing amendment was not relevant to the Board's 1997 decision, the Board had no obligation to consider the amendment in its 1997 decision, and the presumption of administrative regularity is not applicable.  *See ante* at __ & n.3, slip op. at 8 & n.3 (relying on the presumption of administrative regularity to hold that the Board considered the 1994 liberalizing amendment).

whichever is later. Under 38 U.S.C. § 5110(g) and 38 C.F.R. § 3.114(a)(3), the effective date of an award of DIC pursuant to a change in the law and where a claim was filed more than one year after the law took effect is one year prior to the date of the claim. In this case, both the effective-date provisions related to new and material evidence and to liberalizing laws are relevant.

As always, the first question in statutory interpretation is "whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* When Congress leaves "a gap for an agency to fill," the agency is authorized to create rules to account for disparities between statutes. *See Gallegos v. Principi*, 283 F.3d 1309, 1312 (Fed. Cir. 2002) (citing *Morton v. Ruiz*, 415 U.S. 199, 231 (1974) ("The power of an administrative agency to administer a congressionally created and funded program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.")). Similarly, if Congress "does not directly address the precise question at issue," this Court must give deference to the Secretary's interpretation of the law. *Id.* (citing *Chevron*, 467 U.S. at 843).

In this case, applying the two relevant statutory provisions individually, the result is clear. Applying 38 U.S.C. § 5110(a), the effective date of Mrs. Brown's award of DIC would be the date of her claim, April 19, 2001. Applying 38 U.S.C. § 5110(g), the effective date of Mrs. Brown's award of DIC would be one year prior to the date of her claim, April 19, 2000. Although the application of the two effective-date provisions individually is clear, it is not clear what the appropriate effective date is where an award is based on *both* the new and material evidence and the liberalizing law. In isolation, each subsection, 38 U.S.C. § 5110(a) and (g), is clear on its face; in a case such as this where both are implicated, the statutory structure becomes ambiguous.[6]

The Secretary's regulations do nothing to resolve this ambiguity. For the purpose of determining which effective date provision controls, the regulations do little more than parrot the statutory language. *Compare* 38 U.S.C. § 5110(a) and (g) *with* 38 C.F.R. §§ 3.400(q)(1)(ii) and

---

[6] This case provides further evidence that "statutory ambiguity is not an absolute conclusion, but is a case-by-case determination as to whether the language answers the particular question presented. Hence, statutory language that plainly answers one question may still be ambiguous when applied to another." *Haas v. Nicholson*, 20 Vet.App. 257, 262 n.2 (2006).

3.114(a)(3).[7] Moreover, none of this Court's cases applying section 5110(g) and § 3.114(a) address these circumstances. *See, e.g., Bonner v. Nicholson*, 19 Vet.App. 188 (2005); *Link* and *Spencer*, both *supra*. *But see Routen*, 142 F.3d at 1441 ("[I]f a new law provides for benefits not previously available, even though grounded on *some but not all of the same facts adjudicated under an earlier law*, a new cause of action is created along with a new entitlement to a remedy." (emphasis added)). The only guidance provided regarding the applicability of section 5110(g) in claims to reopen is a 1995 opinion of the VA General Counsel, who stated the following:

> We note initially that section 5110(a) places the same general restriction on reopened claims and claims for increase as it does on original claims. Section 5110(g) provides a specific exception to this general rule in cases involving liberalizing laws. Since, as discussed above, section 5110(g) draws no distinction between original claims and previously[ ]denied claims or claims for increase, it provides an exception to section 5110(a) applicable to all three types of claims.

VA Gen. Coun. Prec. 5-94, ¶ 9 (Feb. 18, 1994). In the absence of any statutory or regulatory guidance to the contrary, I find the view of the VA General Counsel that section 5110(g) applies to claims to reopen to be persuasive. *See United States v. Mead Corp.*, 533 U.S. 218, 234-35 (2001) (holding, where *Chevron* deference did not apply, that an agency's interpretation may be given deference "proportional to its 'power to persuade'" (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944))); *Auer v. Robbins*, 519 U.S. 452, 461-62 (1997) (holding that an agency's interpretation of its own regulations is entitled to substantial deference by courts); *Smith v. Nicholson*, 451 F.3d 1344, 1351 (Fed. Cir. 2006) (deferring to VA's interpretation of its regulations in an opinion of the VA General Counsel). In fact, at oral argument, counsel for the Secretary conceded that section 5110(g) would apply to claims to reopen and tempered her concession only by the Secretary's (as well as the Board's and the majority's) erroneous belief that Mrs. Brown was not awarded DIC pursuant to a liberalizing law.

Finally, this resolution of the ambiguity between the effective-date provisions in section 5110 is consistent with the view of the U.S. Supreme Court that interpretive doubt in veterans benefits statutes is to be resolved in the favor of those beneficiaries. *See Brown v. Gardner*, 513 U.S. 115,

---

[7] One notable difference between 38 U.S.C. § 5110(g) and 38 C.F.R. § 3.114(a)(3) is that the regulation uses discretionary language, whereas the statute contains no discretionary language. The regulation provides no guidance on when an earlier effective date "may be authorized" and when it may not. It is not clear that, by regulation, the Secretary may grant himself discretion where Congress has expressly used the word "shall" in section 5110(g).

118 (1994); *King v. St. Vincent's Hosp.*, 502 U.S. 215, 220-21 n.9 (1991); *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946). In this case, it is beyond question that application of this principle would mean that, in the absence of a regulation or other interpretive guidance to the contrary, section 5110(g) and § 3.114(a) would trump section 5110(a) and § 3.400(q)(1)(ii) where they conflict.

Because section 5110(g) is applicable to claims to reopen, following the opinion of the VA General Counsel and resolving interpretive doubt in favor of Mrs. Brown, it becomes clear that section 5110(g) and § 3.114(a) control the award of an effective date in this case. In the absence of any interpretive guidance to the contrary and following the Court's precedent in *Link* and *Spencer*, section 5110(g) and § 3.114(a) govern the award of an effective date for benefits granted pursuant to a liberalizing law, regardless of whether new and material evidence has been submitted, so long as the first de novo readjudication of the claim (meaning an adjudication on the merits) results in the award of benefits.[8]

During his 15 years of service, including service during the Korean War, Johnnie Brown was held as a POW for nearly three years. The statement of Mr. Nix describes the conditions under which he and Mr. Brown were held:

> For our food[,] we were given only cracked corn, millet and some rice. There were some 1,602 prisoners [who] died during this period. Johnn[ie] was seriously ill during the Spring[] of 1951 for several weeks and his medical conditions went

---

[8] Sitting en banc, however, I note that we are not necessarily bound by the Court's holding in *Link*. *See Harms v. Nicholson*, 20 Vet.App. 238, 245 n.7 (2006) (en banc) (noting that the full Court is not bound by prior decisions of this Court); *Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992) ("Only the en banc Court may overturn a panel decision."). Were it necessary to decide this case, I believe reconsideration of the Court's holding in *Link* would be warranted. As I stated above, in holding that section 5110(g) and § 3.114(a) only provide a single opportunity to receive an effective date of one year prior to the date of claim, the Court in *Link* failed to cite to any authority or to engage in any legal analysis to support its holding. The majority's opinion follows *Link* and similarly does not cite to any authority or engage in legal analysis to support its conclusion. I believe that the statutory analysis in this dissenting opinion would apply regardless of whether there was a prior adjudication of a claim that considered the liberalizing law because there is nothing in section 5110(g) or § 3.114(a) that limits the scope of those effective-date provisions to the first readjudication of the claim after the enactment of the liberalizing law. Nonetheless, because my entire analysis is based upon the premise that the intent of Congress is ambiguous in cases where benefits are awarded based on both a liberalizing law and new and material evidence, the Secretary is free to issue regulations to fill this gap in the statute and the Court must defer to such regulations so long as they are reasonable interpretations of the applicable statutes. *See Chevron*, 467 U.S. at 844-45; *Gallegos*, 283 F.3d at 1312. In this case, there is no doubt that the result reached by the Court in *Link* and by the majority in this case would be a reasonable interpretation of the statute *had it been issued by the Secretary*. However, 38 U.S.C. § 501(a) leaves those policy determinations to the Secretary and not to the Court.

unattended. I saw his feet, ankles and lower legs swell and crack open on several occasions while we were prisoners of war.

R. at 39. In 1978, 25 years after his release, Mr. Brown died, presumably as a result of the conditions under which he was held as a POW. *See* 59 Fed. Reg. 35,464-65. For over 21 years, Mrs. Brown filed multiple claims with VA seeking service connection for the cause of her husband's death. R. at 49. The RO finally awarded service connection based upon both the statement of Mr. Nix and the liberalizing change to § 3.309(c). The RO's July 2001 decision was the first de novo adjudication of Mrs. Brown's claim after the relevant liberalizing change in the law. Based upon section 5110(g) and § 3.114(a), Mrs. Brown is entitled to an effective date of one year prior to the date she filed her claim. In fact, with the benefit of Mr. Nix's statement and VA's recognition of the connection between localized edema in captivity and ischemic heart disease, we now know that Mrs. Brown factually met the requirements for DIC since she first filed her claim in 1980. Under the law, we cannot grant Mrs. Brown retroactive entitlement to DIC back to the date of her original claim. However, she is entitled to the benefit of section 5110(g) and § 3.114(a). Based upon the foregoing, I would reverse the Board's effective-date determination and direct the Board to award an effective date of April 19, 2000, for the award of service connection for Mr. Brown's cause of death.[9] I respectfully dissent from the majority's contrary decision.

---

[9] I would reverse the Board's decision notwithstanding Mrs. Brown's counsel's statements at oral argument expressly seeking vacatur and remand rather than reversal. *See also* Appellant's Br. at 9 (requesting that the Court "vacate the Board's decision and remand with an instruction that the Board consider whether Mrs. Brown is entitled to an earlier effective date of April 19, 2000, pursuant to 38 C.F.R. § 3.114(a)(3)"); Reply Br. at 3 (stating essentially the same). Whether section 5110(g) and § 3.114(a) are applicable to this case is purely a question of law. Once that is decided, there are no disputed facts pertinent to the application of those provisions. If they do not apply (as the majority holds), Mrs. Brown is entitled to DIC effective no earlier than the date of her claim to reopen as a matter of law. If they do apply (as I would hold), Mrs. Brown is entitled to DIC effective one year prior to the date of her claim based on an application of the undisputed facts of this case to § 3.114(a)(3). Thus, reversal, not vacatur, would be the appropriate remedy for the Board's error. Remand for the Board to apply the regulation in the first instance to the undisputed facts of this case "would result in this Court's unnecessarily imposing additional burdens on the B[oard] and [the Secretary] with no benefit flowing to the [claimant]." *Soyini v. Derwinski*, 1 Vet.App. 540, 546 (1991); *see Cantu v. Principi*, 18 Vet.App. 92, 99-100 (2004) (applying the plain meaning of a regulation to undisputed facts to determine that the appellant met the eligibility criteria for VA health care, notwithstanding the appellant's argument that vacatur was warranted because the Board did not make pertinent findings of fact regarding the issue).